UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IVOR VAN HEERDEN | * | CIVIL ACTION NO. 3:10-CV-00155 |
| | * | |
| VERSUS | * | |
| | * | |
| BOARD OF SUPERVISORS OF | * | JUDGE JAMES J. BRADY |
| LOUISIANA STATE UNIVERSITY AND | * | |
| AGRICULTURAL AND MECHANICAL | * | |
| COLLEGE, BROOKS KEEL, ROBERT | * | |
| TWILLEY, GEORGE VOYIADJIS, AND | * | |
| DAVID CONSTANT | * | MAGISTRATE CHRISTINE NOLAND |

## ANSWER TO PETITION AND AFFIRMATIVE DEFENSES

NOW INTO COURT, through undersigned counsel, come defendants, the Board of

Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU"), Brooks

Keel ("Keel"), Robert Twilley ("Twilley"), George Voyiadjis ("Voyiadjis"), and David Constant

("Constant") (collectively the "Defendants"), appearing herein for the purpose of answering the

Petition For Declaratory, Injunctive, And Monetary Relief And Jury Demand filed by Ivor Van

Heerden ("Van Heerden") in the Nineteenth Judicial District Court, Parish of East Baton Rouge,

State of Louisiana, No. 587,369, Section 23, hereinafter referred to as the "Complaint", which was

subsequently removed to this Court on March 5, 2010, and for Answer to said Complaint, the

Defendants deny each and every allegation contained therein, except those, if any, which are

1

specifically admitted hereinbelow.

1.

For answer to Paragraph 1 of the Complaint, LSU admits that its correct name is The Board of Supervisors of Louisiana State University Agricultural & Mechanical College and that it is domiciled in the Parish of East Baton Rouge. Keel admits that his name is correctly stated, but denies that he is domiciled in the Parish of East Baton Rouge. Twilley, Voyiadjis and Constant admit that their names and domiciles are stated correctly. Defendants deny any and all liability of any kind to Van Heerden and deny all remaining allegations of Paragraph 1 of the Complaint.

2.

For answer to Paragraph 2 of the Complaint, LSU admits that beginning in 1992 Van Heerden was employed by LSU under various written contracts, containing numerous terms, conditions and limitations which are pleaded herein in extenso, and that said employment has continued through the current date. LSU further admits that it employs greater than 1000 employees. Keel shows that he was employed by LSU in the capacity of Vice Chancellor-Research and Economic Development from July 2006 through January 2010, and that in said capacity he was in a position of authority over Van Heerden. Twilley shows that he was employed by LSU in the position of Associate Vice Chancellor-Research and Economic Development during the period of October 2006 through the present and that in said capacity he was in a position of authority over Van

2

Heerden. Voyiadjis shows that he was employed by LSU as Interim Chair of the Department of Civil and Environmental Engineering in March 2001 and became Chair of the Department in February 2002 and has served in said capacity through the present, and that he was in a position of authority over Van Heerden. Constant shows that he was employed by LSU as Associate Dean of the College of Engineering from 2004 through 2009 and Interim Dean of the College of Engineering from 2008 through 2009 and that in said capacities he was in a position of authority over Van Heerden. Defendants further admit that Sean O'Keefe, Harold Silverman, Michael Ruffner and Zaki Bassiouni were during various time periods employed by LSU and that they were employed in positions of authority over Van Heerden, but that none of these individuals are employed by LSU at the present date. Defendants deny all remaining allegations of Paragraph 2 of the Petition.

3.

Defendants admit that Van Heerden, who is not an engineer, and Mike Bryan wrote a book called "The Storm", a "lay press" publication and not a peer reviewed publication. Defendants further admit that Van Heerden made statements in his book "The Storm" and/or at other public meetings and appearances which were critical of FEMA and/or the U.S. Army Corps of Engineers and/or other state and federal agencies. Defendants further show that Van Heerden often identified himself as employed by and/or as a representative of LSU when making such statements, and failed to comply with Article VIII, Section 1 of the Bylaws of LSU which requires that "[w]hen a member

3

of the academic staff is not officially designated to represent the University System, the staff member must indicate clearly that he or she is speaking as an individual citizen." Defendants deny that Van Heerden's employment with LSU was terminated, but rather show that his one year contract was not renewed. Defendants specifically deny all remaining allegations contained in Paragraph 3 of the Complaint.

4.

For answer to Paragraph 4 of the Complaint, Defendants admit that, pursuant to various contracts, Van Heerden served as an Associate Professor-Research, a non-tenure track position, in the Department of Civil and Environmental Engineering ("CEE") within the College of Engineering ("COE") from October 1, 2000 until the present. Defendants also admit that Van Heerden served as Deputy Director of the LSU Hurricane Center from July 1, 2000 until May 15, 2009, but show that in said position he did not report to the CEE or COE. Defendants further admit that Van Heerden has a Ph.D. in Marine Sciences from LSU, was previously employed in the Center for Coastal, Energy and Environmental Resources ("CCEER") and later transferred to the Louisiana Geological Survey ("LGS"). The remaining allegations of Paragraphs 4 of the Complaint are denied for lack of information sufficient to justify a belief.

5.

For answer to Paragraph 5 of the Complaint, Defendants admit that Dr. Marc Levitan is

4

employed by LSU in the CEE within COE. Defendants further admit that Van Heerden held (and continues to hold) the position of Associate Professor-Research and that he was transferred from LGS to CEE in the year 2000. Defendants deny the remaining allegations of Paragraph 5 for lack of information sufficient to justify a belief.

6.

For answer to Paragraph 6 of the Complaint, Defendants admit that Van Heerden correctly quotes certain portions of LSU Permanent Memorandum 23 ("PM-23") and LSU System Regulations, Sections 2-6 and 2-7 (some of which are not applicable to Van Heerden), but show that there are other relevant provisions which are not quoted by Van Heerden. The criteria for "Associate Professor" (a position Van Heerden never held) described in paragraph 7 of PM-23 are not applicable to Van Heerden. He was an "Associate Professor-Research" described in paragraph 16 of PM-23 as a non-tenure track position. Defendants further show that PM-23 and LSU System Regulations, Sections 2-6 and 2-7, are only part of LSU rules, regulations, policies, procedures and permanent memoranda which may be applicable to Van Heerden's employment and all of which are adopted and pleaded herein in extenso. The remaining allegations of Paragraph 6 of the Complaint contain legal conclusions requiring no answer and/or are denied herein.

7.

For answer to Paragraph 7 of the Complaint, Defendants admit that Van Heerden was

5

denominated as an Associate Professor-Research and show that the appointment forms for Van Heerden since joining the CEE department have consistently denominated him as an Associate Professor-Research, which is a non-tenure track position. This is also stated in all personnel appointment forms and Van Heerden was well aware that he held a research faculty position and was not on a tenure track. Defendants further admit that Van Heerden was paid in part with state funds, but show that his salary was derived from LSU Account 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 which is a research appointment account. Defendants further admit that the personnel action form with a proposed effective date of October 1, 2000 states that the source of current funds is "State General Fund" and the type of position is "Teaching", but shows that the form further states 100% of Van Heerden's effort shall be "Associate Professor-Research." Defendants further show that faculty designated as Associate Professor-Research may be paid with state funds. Defendants deny that paragraph 7 of the PM-23 applies to Van Heerden and deny the remaining allegations as written and further show that "the Personnel Action Form" referred to by Van Heerden in Paragraph 7 of the Complaint is a written document which speaks for itself, is the best evidence of its contents and is pleaded herein in extenso.

8.

For answer to Paragraph 8 of the Complaint, Defendants admit that a Faculty Evaluation-2000 Calendar Year listed Van Heerden's duties and responsibilities as follows:

6

35% - Program development and supervision in the area of natural disasters, and other aspects of natural systems management and engineering, including coastal restoration. Responsible for interagency coordination, proposal and project development, transfer of technology, and the management of applied research projects related to the environment that affect infrastructure, resources and environmental systems. Activities include being the Deputy Director of the LSU Hurricane Center.

30% - Basic and applied research related to natural disasters, coastal and fluvial processes, coastal erosion, environmental restoration, dredging, and other natural system management and engineering issues. Where applicable, research will be published in the scientific literature.

20% - Participation in academic programs, on an as needed basis, within Colleges across campus including the College of Engineering and College of Arts and Sciences. Participation can include, but not limited to, course development, instruction, research supervision, thesis and dissertation committee membership and seminars. Activities include academic aspects of being Deputy Director of the LSU Hurricane Center.

15% - Technical assistance to state and federal agencies dealing with natural disasters, environmental restoration, and resource management. Interaction with state and federal programs that utilize the products of disaster, coastal, and fluvial research. Activities include technical assistance aspects of being Deputy Director of the LSU Hurricane Center.

Defendants deny the remaining allegations as written and show that the faculty evaluations for every

year after 2000 expressly stated that Van Heerden's evaluations were based 100% on research

pursuant to his position as an Associate Professor-Research. Defendants deny that Van Heerden bore

substantial teaching responsibilities and show that he taught DSM 2000 a course that is not within

the COE, a total of only four semesters and CE7000 (a seminar attended by seven students) only one

7

semester. Defendants deny that Voyiadjis advised Van Heerden in October 2006 that he would no longer be allowed to teach. Defendants show that as an Associate Professor-Research, Van Heerden was instructed that he was to devote his efforts to research during the hours of 8:00 a.m. to 4:30 p.m., but he was not prohibited from teaching during other time periods. Finally, Defendants admit that the LSU Graduate Council approved Van Heerden in 2004 for a three year term as an Associate Member of the LSU Graduate Faculty, but further show that said approval is immaterial to any legal issue properly raised herein. Defendants also admit that Voyiadjis signed a Graduate Faculty Nomination form, a document that was not prepared by Voyiadjis, on July 12, 2004, which says "Nominee's work assignment is Teaching: 20%, Research: 30%, Administration: 50%.

9.

For answer to Paragraph 9 of the Complaint, Defendants admit that the CEE faculty evaluated Van Heerden in 2003 as an Associate Professor-Research, but deny that he was reviewed as a tenure track faculty member. Defendants further show that the review by the CEE faculty in 2003 unequivocally stated that Van Heerden's position description allocates his effort as "95% research and 5% administration." The evaluation further states that "his appointment has no teaching requirement." Finally, Defendants show that the document states that although Van Heerden's record is judged positively, "he should take steps to insure that he maintains a level of refereed publications appropriate to his rank." All further allegations of Paragraph 9 of the Complaint are

8

denied. Defendants further show that Van Heerden was evaluated on multiple occasions while he was employed by LSU.

10.

For answer to Paragraph 10 of the Complaint, Defendants show that they are not familiar with the March 17, 2005 letter referenced in Paragraph 10 and therefore deny the allegation pertaining to this letter for lack of information sufficient to justify a belief. The remaining allegations of Paragraph 10 are denied as written because they contain statements of opinion rather than fact and/or are denied for lack of information sufficient to justify a belief.

11.

Defendants deny the allegations of Paragraph 11 of the Complaint regarding statements by and/or opinions of Van Heerden for lack of information sufficient to justify a belief. Defendants have no knowledge of any alleged statements by Harold Silverman to Van Heerden, and therefore must deny the allegations regarding such statements for lack of information sufficient to justify a belief.

12.

Defendants deny the allegations of Paragraph 12 of the Complaint regarding statements by and/or opinions of Van Heerden for lack of information sufficient to justify a belief.

13.

For answer to Paragraph 13 of the Complaint, Defendants admit that Van Heerden was

9

appointed to a group known or referred to as "Team Louisiana" and admit that Van Heerden made comments critical of the Corps. Defendants deny the allegations regarding statements by and/or opinions of Van Heerden for lack of information sufficient to justify a belief. The remaining allegations of Paragraph 13 of the Complaint are denied for lack of information sufficient to justify a belief.

14.

Defendants deny the allegations of Paragraph 14 of the Complaint for lack of information sufficient to justify a belief. However, Defendants show that any testimony by Van Heerden before the U. S. Senate Committee on Homeland Security and Governmental Affairs should be a matter of public record, speaks for itself, is the best evidence of its content and requires no answer by Defendants herein.

15.

Defendants deny the allegations of Paragraph 15 of the Complaint for lack of information sufficient to justify a belief, and further show that any such statement/testimony by Van Heerden is immaterial to any legal issue properly raised herein.

16.

Defendants deny the allegations of the Paragraph 16 of the Complaint regarding statements by and/or opinions of Van Heerden for lack of information sufficient to justify a belief.

10

17.

Defendants deny the allegations of Paragraph 17 of the Complaint for lack of information sufficient to justify a belief and show that the referenced New York Times article is immaterial to any legal issue properly raised herein.

18.

Defendants deny the allegations of Paragraph 18 of the Complaint for lack of information sufficient to justify a belief and show that the referenced Washington Post article is immaterial to any legal issue properly raised herein.

19.

For answer to Paragraph 19 of the Complaint, Defendants are not familiar with the reaction of the Corps, if any, and to whom, if anyone, the Corps made its views known, so Defendants must deny such allegations for lack of information sufficient to justify a belief. Defendants admit that Professor Dokka sent an email to LSU Administrators dated October 2005, in which he made statements which are partially quoted in Paragraph 19 of this Complaint. Defendants deny the allegations regarding the New York Times article for lack of information sufficient to justify a belief, and show that the referenced article is immaterial to any legal issue properly raised herein. Defendants LSU and Twilley specifically deny that Silverman and Twilley "attempted unsuccessfully to intercede with the Louisiana Governor's office to prevent the Team Louisiana study from going

11

forward under Dr. Van Heerden's leadership" and Defendants Keel, Voyiadjis and Constant deny this allegation for lack of information sufficient to justify a belief. Defendants further deny the allegation that the Corps "was historically an important funding source for the COE and other components of LSU." Finally, Defendants are not familiar with the alleged actions of the Louisiana Attorney General's office and, therefore, must deny the allegations regarding such actions for lack of information sufficient to justify a belief.

20.

Defendants deny the allegations of Paragraph 20 of the Complaint for lack of information sufficient to justify a belief.

21.

For answer to Paragraph 21 of the Complaint, Defendants deny the allegation that there were "ongoing efforts of the chancellor's office and CoE to silence him [Van Heerden]." Defendants further deny the allegations of Paragraph 21 of the Complaint regarding statements by, actions of, and/or opinions of Van Heerden for lack of information sufficient to justify a belief.

22.

For answer to Paragraph 22 of the Complaint, Defendants deny the allegations for lack of information sufficient to justify a belief, and show that the referenced article is immaterial to any legal issue properly raised herein.

12

23.

For answer to Paragraph 23 of the Complaint, Defendants admit that then Vice Chancellor Ruffner sent a letter to the New York Times in which he made statements which are partially quoted in Paragraph 23. The Defendants deny the remaining allegations for lack of information sufficient to justify a belief, and show that the referenced article is immaterial to any legal issue properly raised herein.

24.

For answer to Paragraph 24 of the Complaint, Defendants admit that the Advocate published a letter by Professor Rau on or about June 28, 2006, in which he made statements which are partially quoted in Paragraph 24. Defendants deny the allegations of Paragraph 24 of the Complaint which attempt to characterize Professor Rau's statements, and show that the referenced letter is immaterial to any legal issue properly raised herein.

25.

For answer to Paragraph 25 of the Complaint, Defendants admit that the Daily Reveille published an editorial entitled "Time for an Apology, Dr. Ruffner"dated July 6, 2006. Defendants deny the remaining allegations for lack of information sufficient to justify a belief, and show that the referenced editorial is immaterial to any legal issue raised herein.

13

26.

Defendants deny the allegations regarding statements made at the alleged meeting between Marc Levitan and Vice Chancellor Ruffner for lack of information sufficient to justify a belief.

27.

For answer to Paragraph 27 of the Complaint, Defendants admit that Keel replaced Dr. Silverman as Vice Chancellor for Research and Economic Development in July 2006. Defendants further admit that Twilley was thereafter appointed Associate Vice Chancellor for Research and Economic Development and that Twilley was assigned responsibility for LSU programs involving coastal restoration and the study of hurricanes. Defendants LSU and Twilley specifically deny that Twilley "promptly took steps to marginalize Dr. Van Heerden and to put him on an ever tighter leash" and Defendants Keel, Voyiadjis and Constant deny this allegation for lack of information sufficient to justify a belief.

28.

For answer to Paragraph 28 of the Complaint, Defendants admit that the COE revised the Research Faculty Policy on or before October 2005. Defendants further show that the policy was reviewed (with input), by the College Policy Committee and by the Chairs of the various college departments. Defendants LSU and Voyiadjis admit that Voyiadjis met with Van Heerden and discussed the policy, but deny that he told Van Heerden that he would no longer be allowed to teach.

14

LSU and Voyiadjis show that as an Associate Professor-Research, Van Heerden was instructed that he was to devote his efforts to research during the hours of 8:00 a.m. to 4:30 p.m., but he was not prohibited from teaching during other time periods. LSU and Voyiadjis further deny telling Van Heerden in October 2006 that he "would be judged exclusively based on his research, and not on the combined criteria of teaching, research and service" and show that Van Heerden was well aware that he was being judged and/or evaluated based 100% on research long before October 2006. In other words, there was no change in October 2006 as to the nature of Van Heerden's research responsibilities. He had been told for many years that he was being evaluated 100% based upon research. Further, LSU and Voyiadjis admit that Van Heerden requested documentation related to his position in CEE and Voyiadjis did send him a packet of information which included the referenced policy. Voyiadjis denies telling Van Heerden in October 2006 that he "would be allowed to hold only a one-year appointment". Defendants Keel, Twilley and Constant deny the allegations of Paragraph 28 of the Complaint regarding the meeting between Voyiadjis and Van Heerden for lack of information sufficient to justify a belief.

29.

Defendants deny the allegations of Paragraph 29 of the Complaint as written and specifically deny that the referenced revisions to the College of Engineering Policy on Research Faculty was "promulgated" during the initial turmoil engendered by his [Van Heerden's] criticisms of the Corps."

15

Defendants show that the revisions to the College of Engineering Policy on Research Faculty were initiated long before October 2005, when the policy was reviewed (with input) by the College Policy Committee and the Chairs of the various college departments. Defendants admit that Paragraph 29 quotes portions or phrases from three sentences of the College of Engineering Policy on Research Faculty - Revised Draft 10.18.05.

30.

Defendants deny the allegation in Paragraph 30 that the revised College of Engineering Policy on Research Faculty "could not apply to Dr. Van Heerden or to the position he had occupied since 2000." Defendants further deny the allegation that "he held an academic appointment and not a research appointment and thus was not subject to the policy." Defendants show that the appointment forms for Van Heerden since he joined the CEE department were at the level of Associate Professor-Research and not a tenure track faculty position. This was clearly stated in all personnel appointment forms and Van Heerden was well aware that he held a research faculty position. As previously stated, Van Heerden's academic instruction was quite limited and he in fact taught only one seminar course (in 2004) within the College of Engineering. Thus, Van Heerden's allegation in Paragraph 30 of the Complaint that he "always taught during regular hours" is inaccurate and is accordingly denied by Defendants. Defendants deny the remaining allegations of Paragraph 30 of the Complaint for lack of information sufficient to justify a belief.

16

31.

Defendants deny the allegations of Paragraph 31 of the Complaint, except to admit that Van

Heerden was granted one year research appointments as an Associate Professor-Research until notice

of non-renewal of his most recent contract which expires in May 2010.

32.

For answer to Paragraph 32 of the Complaint, Defendants admit that Van Heerden was paid,

in part, with state funds, but show that his salary was derived from LSU account 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 which

is a research appointment account. Defendants admit that Van Heerden was paid an annual salary

for nine months work. Defendants show that in 2000, Van Heerden was given a ten month paid

appointment which was later (in about 2003) changed to a nine month paid appointment. Defendants

deny the allegation in Paragraph 32 that the revised College of Engineering Policy on Research

Faculty did not apply to Van Heerden and show that the entirety of said revised policy (only portions

of which are quoted) speaks for itself and is the best evidence of its contents. Defendants deny Van

Heerden's allegation that he held a position other than that of Associate Professor - Research and

show that Van Heerden was provided with annual faculty evaluations since 2001 that stated that he

was being evaluated based upon 100% research and that his title was Associate Professor - Research.

Defendants deny the allegation that Van Heerden received his first faculty review in early 2008 and

show that he received a faculty review much earlier in 2003. Defendants deny the remaining

17

allegations of Paragraph 32 of the Complaint.

33.

For answer to Paragraph 33 of the Complaint, Defendants deny the allegation that "LSU administration and COE continue to take retaliatory actions against Dr. Van Heerden to discredit and marginalize him." The remaining allegations of Paragraph 33 of the Complaint are denied for lack of information sufficient to justify a belief.

34.

Defendants deny the allegations of Paragraph 34 of the Complaint for lack of information sufficient to justify a belief.

35.

Defendants deny the allegations of Paragraph 35 of the Complaint for lack of information sufficient to justify a belief.

36.

For answer to Paragraph 36 of the Complaint, LSU, Keel and Twilley admit that Paragraph 36 accurately quotes a portion of two sentences of multiple email communications between Keel and Twilley and/or Chancellor O'Keefe and further show that the entirety of these emails, which are pleaded herein in extenso, speak for themselves and are the best evidence of their contents. LSU, Keel and Twilley deny the remaining allegations of Paragraph 36 of the Complaint for lack of

18

information sufficient to justify a belief. Voyiadjis and Constant deny all allegations of Paragraph 36 of the Complaint for lack of information sufficient to justify a belief.

37.

For answer to Paragraph 37 of the Complaint, Defendants deny the allegation that the LSU administration demonstrated "animus against Dr. Van Heerden for his continued criticism of the Corps..." LSU, Twilley and Keel admit that Paragraph 37 accurately quotes a portion of a sentence of an email communication by Keel and show that the entirety of this communication, which is pleaded herein in extenso, speaks for itself and is the best evidence of its contents. Voyiadjis and Constant deny all remaining allegations of Paragraph 37 for lack of information sufficient to justify a belief.

38.

For answer to Paragraph 38 of the Complaint, LSU, Keel and Twilley admit that Van Heerden was not selected to participate on the SERT project, but show that numerous other LSU scientists and engineers (including Paul Kemp) were also not selected to participate. Twilley served as Chair of SERT under contract with the Department of Natural Resources (DNR) and final decisions on membership in SERT were those of DNR and the Governor's Office of Coastal Activities. LSU, Keel and Twilley deny the remaining allegations of Paragraph 38 for lack of information sufficient to justify a belief. Defendants Voyiadjis and Constant deny all allegations of

19

Paragraph 38 of the Complaint for lack of information sufficient to justify a belief.

39.

For answer to Paragraph 39 of the Complaint, Defendants deny the allegation that "Dr. Twilley's continued exclusion of Dr. Van Heerden from the SERT meeting reflected the LSU's Administration's retaliatory animus towards faculty who spoke out with criticisms of the Corps." LSU, Twilley and Keel admit that Paragraph 39 accurately quotes a portion of email communications between Keel and Twilley and show that the entirety of said email communications, which are pleaded herein in extenso, speak for themselves and are the best evidence of their contents. LSU, Keel and Twilley deny the remaining allegations of Paragraph 39 of the Complaint for lack of information sufficient to justify a belief. Voyiadjis and Constant deny all allegations of Paragraph 39 of the Complaint for lack of information sufficient to justify a belief.

40.

For answer to Paragraph 40 of the Complaint, LSU admits that Van Heerden submitted a form PM-11, but deny that Van Heerden received no response to his request. LSU denies the remaining allegations of Paragraph 40 of the Complaint for lack of information sufficient to justify a belief. Keel, Twilley, Constant and Voyiadjis deny all allegations of Paragraph 40 for lack of information sufficient to justify a belief.

20

41.

For answer to Paragraph 41 of the Complaint, Defendants deny that they prohibited Van Heerden from testifying as an expert witness or that they interfered with his ability to earn income or affected his reputation and standing in the community. Defendants deny the remaining allegations of Paragraph 41 of the Complaint for lack of information sufficient to justify a belief.

42.

For answer to Paragraph 42 of the Complaint, Defendants deny that they barred Van Heerden from testifying. Defendants deny the remaining allegations of Paragraph 42 of the Complaint for lack of information sufficient to justify a belief.

43.

Defendants deny the allegations of Paragraph 43 of the Complaint for lack of information sufficient to justify a belief.

44.

For answer to Paragraph 44 of the Complaint, Defendants deny the allegation that "LSU's efforts to marginalize Dr. Van Heerden continued..." LSU, Keel and Twilley admit that Twilley was in charge of the new coastal environmental risk assessment ("CERA") modeling group. LSU, Keel and Twilley further admit that Van Heerden was not included in the CERA group but show that the group consisted of directors of various applicable centers (which included the Southern Regional

Climate Center, LSU Hurricane Center, WAVCIS, Earth Scan Laboratory, Louisiana Water Resources Institute, LSU Center for Geoinfomatics, LSU Transportation Lab, and Louisiana Sea Grant Program) and did not generally include deputy directors and/or subordinates. LSU, Keel and Twilley further admit that Paragraph 44 includes accurate quotes of portions of email communications by Keel and show that the entirety of said email communications, which are pleaded herein in extenso, speak for themselves and are the best evidence of their contents. LSU and Twilley admit that Twilley told Levitan that he would be fired if Van Heerden was part of the administrative group identified above, but shows that he also told Levitan that Van Heerden could serve as a technical consultant for CERA. LSU, Keel and Twilley deny the remaining allegations of Paragraph 44 of the Complaint for lack of information sufficient to justify a belief. Voyiadjis and Constant deny all allegations of Paragraph 44 of the Complaint for lack of information sufficient to justify a belief.

45.

For answer to Paragraph 45 of the Complaint, Defendants admit that Van Heerden was reviewed by the CEE faculty in 2008 and was reappointed for a one year term. However, Defendants show that the faculty vote for reappointment was evenly divided (7-7) without a majority and the decision to grant reappointment was made by the CEE Chair Voyiadjis. Defendants deny the allegation in Paragraph 45 that the "faculty adhered to the instruction of CoE Dean Bassiouni to limit

22

its review to Van Heerden's research, and not to base the review on the combined criteria of research, teaching and service prescribed by PS-36, notwithstanding that teaching and service remained elements of Dr. Van Heerden's position description." Defendants show that Van Heerden's reviews since 2001 had been based 100% on research pursuant to his position as a Research Associate Professor. Defendants deny the remaining allegations of Paragraph 45 of the Complaint for lack of information sufficient to justify a belief, and further show that the faculty's vote is immaterial to any of the legal issues properly raised herein.

46.

For answer to Paragraph 46 of the Complaint, LSU and Twilley deny the allegation of any "continuing retaliatory animus of LSU officials towards him [Van Heerden]." LSU and Twilley admit that Van Heerden was not included in the CERA group, but as explained in Paragraph 44 above, the group consisted of the directors of various applicable centers and did not generally include deputy directors and/or subordinates. Twilley denies making any warning that Van Heerden "would be fired if he spoke to the media regarding surge modeling", but admits generally saying that he did not want to see or be in the same room with Van Heerden. LSU and Twilley admit that Kevin Robbins was the key LSU contact during EOC operations for hurricane events and Twilley gave Robbins authority to use any available human resources at LSU, including Van Heerden, to assist him in EOC operations and in advising the Governor's Office of Homeland Security in Emergency

23

Preparedness ("GOHSEP"). LSU and Twilley deny the remaining allegations for lack of information sufficient to justify a belief. Keel, Voyiadjis and Constant deny all allegations of Paragraph 46 of the Complaint for lack of information sufficient to justify a belief.

47.

For answer to Paragraph 47 of the Complaint, LSU and Twilley admit that Van Heerden contacted Rick Luettich about the performance of surge modeling runs, but shows that Luettich was already performing surge modeling runs that were provided to CERA and subsequently to EOC. LSU and Twilley admit that Luettich wrote an email to Twilley regarding Van Heerden, two words of which are accurately quoted in Paragraph 47, and that Twilley responded to the Luettich's email regarding Van Heerden, one word of which is accurately quoted in Paragraph 47. LSU and Twilley deny the remaining allegations of Paragraph 47 as written and show that the quoted communications are immaterial to any of the legal issues properly raised herein. Keel, Constant and Voyiadjis deny all allegations of Paragraph 47 for lack of information sufficient to justify a belief.

48.

For answer to Paragraph 48 of the Complaint, LSU and Twilley admit that Paragraph 48 accurately quotes portions or phrases from Dr. Robbins' post-storm report. LSU and Twilley are not familiar with the referenced email purportedly between Dr. Robbins and Dr. Levitan and therefore deny the allegations relating to said email for lack of information sufficient to justify a belief. LSU

24

and Twilley deny all remaining allegations of Paragraph 48. Keel, Constant and Voyiadjis deny all allegations of Paragraph 48 for lack of information sufficient to justify a belief.

49.

For answer to Paragraph 49 of the Complaint, LSU and Twilley deny instructing Van Heerden that he was not to perform storm surge runs. LSU and Twilley have no knowledge of the purported communications between Robbins and Van Heerden and therefore deny said allegations for lack of information sufficient to justify a belief. LSU and Twilley admit that Van Heerden posted storm surge data runs on the Hurricane Public Health Center's webpage, but deny for lack of knowledge the allegation that said data runs were reproduced on the Times Picayune's webpage. LSU and Twilley deny the remaining allegations of this paragraph for lack of information sufficient to justify a belief. Keel, Constant and Voyiadjis deny all allegations of Paragraph 49 for lack of information sufficient to justify a belief.

50.

Defendants deny the allegations of Paragraph 50 of the Complaint for lack of information sufficient to justify a belief.

51.

For answer to Paragraph 51 of the Complaint, LSU and Twilley admit that Twilley told Levitan to remove the data from the Hurricane Health Center webpage, because it was contrary to

25

written CERA policy which provided that such data would be directed to emergency managers who were responsible for public safety and would not be published to the public in general. LSU and Twilley deny that Twilley told the Times Picayune that he received complaints from the National Weather Service, but did say that emergency managers had complained about the public dissemination of this information. LSU and Twilley deny the remaining allegations of this paragraph. Keel, Constant and Voyiadjis deny all allegations of Paragraph 51 for lack of information sufficient to justify a belief.

52.

For answer to Paragraph 52 of the Complaint, LSU and Constant admit that in early 2009, Van Heerden submitted a package in support of his application for reappointment for an additional year. LSU and Constant further admit that Constant met with Van Heerden in April 2009 and presented him with a letter stating that his appointment would not be renewed. LSU and Constant further admit that Constant declined to discuss the reason for the nonrenewal of Van Heerden's appointment. LSU and Constant deny the remaining allegations of Paragraph 52 of the Complaint. Keel, Twilley and Voyiadjis deny all allegations of Paragraph 52 for lack of information sufficient to justify a belief.

53.

For answer to Paragraph 53 of the Complaint, LSU, Voyiadjis and Constant admit that the

26

CEE faculty conducted a review of Dr. Van Heerden's performance and that said review took place after Constant made the decision not to renew Van Heerden's appointment. LSU, Voyiadjis and Constant further admit that of the sixteen participating members of the CEE faculty, four voted for a recommendation of reappointment, eight opposed reappointment and four abstained. LSU, Voyiadjis and Constant deny the remaining allegations of Paragraph 53 of the Complaint. Keel and Twilley deny all allegations of Paragraph 53 of the Complaint for lack of information sufficient to justify a belief.

### 54.

For answer to Paragraph 54 of the Complaint, Defendants admit that Van Heerden's employment as an Associate Professor-Research in CEE in the College of Engineering will come to an end on May 21, 2010.

### 55.

Defendants deny that they took any action which violated any right guaranteed to Van Heerden by the First Amendment of the United States Constitution. The remaining allegations of Paragraph 55 of the Complaint contain legal conclusions which do not require an answer by Defendants.

### 56.

For answer to Paragraph 56 of the Complaint, Defendants admit that Van Heerden publicly

27

criticized the Corps, and show that he often stated in his public statements that he was employed by and/or a representative of LSU and failed to comply with Article VIII, Section 1 of LSU's Bylaws. Defendants deny subjecting Van Heerden to any "illegal retaliation." The remaining allegations of Paragraph 56 of the Complaint contain legal conclusions which do not require an answer by Defendants.

57.

Defendants deny the allegations of Paragraph 57 of the Complaint.

58.

Defendants deny the allegations of Paragraph 58 of the Complaint.

59.

Defendants deny the allegations of Paragraph 59 of the Complaint.

60.

For answer to Paragraph 60 of the Complaint, Defendants deny the allegation that they illegally suppressed Petitioner's speech on a matter of prominent public concern and further deny that Van Heerden's exercise of his First Amendment rights were entirely outside of his job duties and responsibilities. Defendants show that Van Heerden often stated in his public statements that he was employed by and/or a representative of LSU. The remaining allegation to Paragraph 60 of the Complaint relate to legal conclusions and do not require an answer by Defendants.

28

61.

Defendants deny the allegations of Paragraph 61 of the Complaint.

62.

Defendants deny the allegations of Paragraph 62 of the Complaint.

63.

For answer to Paragraph 63 of the Complaint, Defendants deny taking any action to deprive Van Heerden of any right guaranteed to him pursuant to the Fourteenth Amendment of the United States Constitution. The remaining allegations of the Complaint contain legal conclusions which require no answer by Defendants.

64.

Defendants deny the allegations of Paragraph 64 of the Complaint.

65.

Defendants deny the allegations of Paragraph 65 of the Complaint.

66.

Defendants deny the allegations of Paragraph 66 of the Complaint.

67.

Defendants deny the allegations of Paragraph 67 of the Complaint.

29

68.

Defendants deny the allegations of Paragraph 68 of the Complaint.

69.

For answer to Paragraph 69 of the Complaint, Defendants admit that Van Heerden accurately quotes portions of PM-23, but show that the criteria for "Associate Professor" described in Paragraph 7 of PM-23 are not applicable to Van Heerden. He was an "Associate Professor-Research" described in Paragraph 16 of PM-23, a non-tenured track position.. Defendants deny all remaining allegations of Paragraph 69 of the Complaint, and show that the quoted portions of Paragraph 7 of PM-23 are immaterial to any legal issues properly raised herein.

70.

For answer to Paragraph 70 of the Complaint, Defendants deny that Van Heerden was "de facto a tenured faculty member with a property interest in appointment for a fixed period of time." Defendants further deny that Van Heerden had a "tenured appointment" or had any "tenure rights of Associate Professors." Defendants admit that Van Heerden was paid with state funds, in part, but show that his salary was derived from LSU Account 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 which is a research appointment account and furthermore there is no requirement that Associate Professors-Research be paid from grant or contract funds. Defendants further deny Van Heerden's contention that the revised College of Engineering Policy on Research Faculty did not apply to him. Defendants show that the

30

appointment forms for Van Heerden since he joined the CEE department were at the level of Associate Professor-Research and not a tenured track faculty position. This is also stated in all personnel appointment forms and Dr. Van Heerden was well aware that he held a research faculty position. Additionally, Van Heerden was provided with annual Faculty Evaluations since 2001 that stated he was being evaluated based upon 100% research and that his title was Associate Professor-Research. The remaining allegations of Paragraph 70 of the Complaint contain legal conclusions requiring no answer and/or are denied.

71.

For answer to Paragraph 71 of the Complaint, Defendants deny that Van Heerden had any property interest in continued employment and/or that Defendants deprived Van Heerden of any right to which he is constitutionally entitled under the Fourteenth Amendment of the United States Constitution. The remaining allegations of Paragraph 71 of the Complaint contain legal conclusions and require no answer by Defendants and/or are denied.

72.

Defendants deny the allegations of Paragraph 72 of the Complaint.

73.

Defendants deny the allegations of Paragraph 73 of the Complaint.

31

74.

Defendants deny the allegations of Paragraph 74 of the Complaint.

75.

Defendants deny the allegations of Paragraph 75 of the Complaint.

76.

For answer to Paragraph 76 of the Complaint, Defendants deny that Van Heerden has any "de facto tenure right." Defendants further deny that LSU "violated the then-governing procedures for reappointment and non-reappointment for non-tenure track faculty." Defendants admit that Van Heerden correctly quotes portions of PS-36, but deny any violation of PS-36. Defendants further show that PS-36 expressly provides that "reappointment is solely at the initiative of the University." Defendants further deny Van Heerden's allegation that Section V.B.3. "specifies that the dean will only then 'review and make reappointment recommendations upon review of the recommendation by the departmental faculty.'" Finally, Defendants show that Van Heerden's non-renewal was without cause and was not performance based and thus is governed by the Bylaws and Regulations of the LSU Board of Supervisors regarding term appointments.

77.

Defendants deny the allegations of Paragraph 77 of the Complaint.

32

78.

For answer to Paragraph 78 of the Complaint, Defendants admit that Van Heerden correctly quotes a portion of PS-36 Section V, but deny any violation of PS-36. Defendants further show that Van Heerden's non-renewal was without cause and was not performance based. As such, non-renewal was governed by the Bylaws and Regulations of the LSU Board of Supervisors regarding term appointments and no statement of reasons was required.

79.

For answer to Paragraph 79 of the Complaint, Defendants admit that the faculty majority made a distinction between "public policy topics" and "research papers dealing with engineering and/or science where hypothesis are developed, tested and evaluated," but deny that any such distinction was "false and novel." Defendants further deny that "the faculty review nevertheless gave inadequate consideration to Dr. Van Heerden's research publications". Defendants also deny that Van Heerden's publications "fully satisfied the majority's description of accepted research papers." Defendants deny the remaining allegations of Paragraph 79 of the Complaint as written and show that Van Heerden's non-renewal was without cause and was not performance based. As such, non-renewal was governed by the Bylaws and Regulations of the LSU Board of Supervisors regarding term appointments..

33

80.

Defendants deny the allegations of Paragraph 80 of the Complaint.

81.

For answer to Paragraph 81 of the Complaint, Defendants admit that the faculty minority purportedly quotes from the "broader impacts criterion for NSF research example activities" and that the minority faculty opinion states that this criterion includes "presenting research and education results in formats useful to policy makers, members of Congress, industry and broad audiences" and "providing information for policy formulation by Federal, State or local agencies." Defendants deny the allegation that the majority dismissed publications that "plainly satisfy the standard for NSF-sponsored research" and deny all remaining allegations of Paragraph 81 of the Complaint as written and show that the quoted statements are immaterial to any of the legal issues properly raised herein. Defendants further show that Van Heerden's non-renewal was without cause and was not performance based and was governed by the Bylaws and Regulations of the LSU Board of Supervisors regarding term appointments.

82.

Defendant LSU denies the allegations of Paragraph 82 of the Complaint. Keel, Twilley, Voyiadjis and Constant show that Paragraph 82 of the Complaint does not include allegations pertaining to them and therefore no answer is required. If however, an answer is in fact required,

34

Keel, Twilley, Voyiadjis and Constant deny the allegations of Paragraph 82 of the Complaint.

83.

For answer to Paragraph 83 of the Complaint, Defendants show that Van Heerden does not allege when, where or by whom the alleged statements were made and, therefore Defendants must deny the allegations regarding the statements in Paragraph 83 of the Complaint for lack of information sufficient to justify a belief. Defendants deny all further allegations of Paragraph 83 of the Complaint..

84.

Defendants deny the allegations of Paragraph 84 of the Complaint.

85.

Defendants deny the allegations of Paragraph 85 of the Complaint.

86.

Defendants deny the allegations of Paragraph 86 of the Complaint.

87.

Defendants deny the allegations of Paragraph 87 of the Complaint.

88.

Defendants deny the allegations of Paragraph 88 of the Complaint.

35

89.

Defendants deny the allegations of Paragraph 89 of the Complaint.

90.

Defendants deny the allegations of Paragraph 90 of the Complaint.

91.

Defendants deny the allegations of Paragraph 91 of the Complaint.

92.

Defendants deny the allegations of Paragraph 92 of the Complaint.

93.

The allegations of Paragraph 93 of the Complaint contain a request for a trial by jury, rather than factual allegations, and therefore no answer is required. If, however, an answer is in fact required, Defendants deny the allegations of Paragraph 93 of the Complaint.

**AND NOW,** further answering the allegations of the Complaint and as affirmative defenses thereto, Defendants show:

94.

Defendants deny any violation of any Federal or State constitution or law, including 42 U.S.C. 1983, 42 U.S.C. 1985 and/or La. R.S. 23:967.

36

95.

Defendants aver that some or all of the claims asserted by Van Heerden in the Complaint are time-barred by virtue of the applicable federal and/or state statutes of limitations.

96.

The Defendants were not guilty of any fault or neglect whatsoever which caused or contributed to any loss or damages alleged by Van Heerden in the Complaint. Any loss or damages arising from the matter sued upon were caused solely and entirely by the fault of Van Heerden.

97.

Defendants further show that Van Heerden's recovery, if any, should be substantially reduced by his failure, refusal, or neglect to mitigate damages as allegedly sustained herein. As such, in the event that Defendants are found liable for any amounts whatsoever, then in that event, Defendants are entitled to an offset against any award of damages in an amount equal to all interim earnings received by Van Heerden from his employment with LSU and/or other sources, and all other additional sums that Van Heerden could have earned had he made a reasonable effort to mitigate damages as required by law.

98.

Defendants show that if liability is available against them, which is denied, said liability is subject to the limitations regarding damages set forth in applicable state and federal law.

37

99.

Keel, Constant, Voyiadjis and Twilley show that the Complaint fails to state a claim upon which relief can be granted as to them, in whole or in part, because they are governmental officials and as such are entitled to qualified immunity from liability for civil damages.

100.

Defendants' conduct did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known. Instead, Defendants show that their actions relating to Van Heerden were neither arbitrary nor capricious and, to the contrary, constituted the exercise of reasonable and appropriate discretion.

101.

Defendants show that the Complaint fails to state a claim upon which relief can be granted, in whole or in part, because Van Heerden has no constitutionally protected property or liberty interest in the possibility of tenure and/or continued employment with LSU. As such, Van Heerden has no substantive or procedural due process rights to tenure and/or continued employment with LSU.

102.

Defendants deny that adverse employment action(s) were taken against Van Heerden. In the

38

alternative, Defendants aver that if any adverse employment action was taken it was not due to Van Heerden's assertion of any Constitutionally protected right and/or a result of any unlawful retaliation or reprisal.

103.

Defendants aver that some and/or all of the speech which Van Heerden alleges as the basis of his claim was undertaken in the course of performing his job, i.e., pursuant to official duties, and show that Van Heerden failed to comply with Article VIII, Section 1 of the Bylaws requiring that he indicate that he was speaking in his personal capacity.

104.

Defendants further aver that some and/or all of the speech which Van Heerden alleges as the basis of his claim was not on a matter of public concern and that his interest in expressing himself on the matter was outweighed by the injury the speech would cause to LSU and LSU's interest in promoting the efficiency of the public services it performs through its employees.

105.

Defendants aver that some and/or all of the speech which Van Heerden alleges as the basis of his claim was not a factor, much less a substantial or motivating factor, in Defendants' decision making process with respect to those matters of which he complains.

39

106.

Van Heerden, due to his past actions and/or inactions, has waived, is estopped and/or is barred from pursuing any claims alleged in the Complaint and from recovery of any damages from Defendants.

107.

Van Heerden failed to advise Defendants of any action which constituted a violation of law as required by La. R.S. 23:967 and accordingly, he is unable to bring a claim under this statute.

108.

Defendants further aver that Van Heerden did not suffer a reprisal under La. R.S. 23:967, because Defendants are entitled to enforce established employment policies, procedures or practices.

109.

Van Heerden lacked good faith sufficient to recover under La. R.S. 23:967. He has brought this frivolous claim in bad faith and accordingly, Defendants are entitled to attorney's fees and costs, pursuant to La. R.S. 23:967.

110.

The Complaint fails to state a claim against Defendants for libel, slander, and/or defamation and Defendants affirmatively set forth the following defenses to said claims:

      (a)    Any and all statements of fact made by Defendants regarding Van Heerden were true and/or substantially correct;

40

(b)  Van Heerden has not alleged with particularity any false or defamatory statements made by Defendants;

(c)  Statements alleged by Van Heerden to be defamatory are opinions and are not defamatory;

(d)  Any statements alleged to have been made to Defendants' own employees are entitled to a qualified privilege and as such were not a publication for purposes of defamation;

(e)  Any statements alleged to have been made by Defendants were not published to the local community by Defendants and are not actionable as defamation; and/or

(f)  Defendants did not act with malice or fault and any statements made by Defendants were based upon a reasonable belief in the truth thereof and after reasonable and accurate investigation.

111.

Defendants deny that Van Heerden's criticism of the Corps or speech on any other matter was a substantial or motivating factor in the decision not to renew his employment. Defendants show that it would have taken the same action (i.e., non-renewal of his employment), in the absence of any of such speech by Van Heerden.

WHEREFORE, LSU, Keel, Twilley, Voyiadjis, and Constant pray that this Answer To Petition And Affirmative Defenses be deemed good and sufficient and that after all legal delays and proceedings are had, there be judgment in favor of Defendants dismissing Van Heerden's claims in their entirety, with prejudice, at his costs, and for all other general and equitable relief that may be

41

available in the premises.

By Attorneys,

KANTROW, SPAHT, WEAVER & BLITZER
(A PROFESSIONAL LAW CORPORATION)
445 North Boulevard, Suite 300 (70802)
P. O. Box 2997
Baton Rouge, Louisiana 70821-2997
Telephone: (225) 383-4703
Facsimile: (225) 343-0630

By: /s/Richard F. Zimmerman, Jr.
        Richard F. Zimmerman, Jr. (#13800)
        Randal J. Robert (#21840)
        Jennifer A. Hataway (#26323)
        Julie M. McCall (#29992)
Attorneys for Defendants

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Answer To Petition And Affirmative Defenses has been served on Jill L. Craft, 721 North Street, Baton Rouge, Louisiana 70802, by placing same in the United States mail, postage prepaid and properly addressed and/or by facsimile and/or by PACER notice, this 7th day of April, 2010.

/s/Richard F. Zimmerman, Jr.
Richard F. Zimmerman, Jr.

#238745

42