UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DR. IVOR van HEERDEN                CIVIL ACTION NO. 10-155

VERSUS                              JUDGE: BRADY

BOARD OF SUPERVISORS, ET AL.        MAGISTRATE-JUDGE:

****************************************************

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF**

MAY IT PLEASE THE COURT:

**FACTS:**

On February 10, 2010, plaintiff, Dr. van Heerden, filed his lawsuit in state court alleging claims against his employer, Board of Supervisors, and named defendants, in their individual and their official capacities. Thereafter, defendants removed this action to this Court clearly waiving any claim or entitlement to 11th Amendment immunity. *Lapides v. Board of Regents, et al.*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).

On April 9, 2010, plaintiff filed a Motion for Injunctive Relief. Plaintiff's Motion will be heard commencing on May 19, 2010. In the interim, the Court requested the parties submit supplemental briefings with the plaintiff directed to address more fully the issue of irreparable harm.

**LAW AND ARGUMENT:**

**1. Immediacy**

In brief, defendants argue against injunctive relief contending there is a lack of immediacy. Specifically, defendants state that plaintiff knew he was to be fired last year and took no steps to protect his rights at that time. However, as the evidence will show, contrary to the defendants'

1

Case 3:10-cv-00155-JJB-CN   Document 25   05/14/10   Page 1 of 13

position, the plaintiff diligently attempted to resolve this matter on several fronts short of litigation - a last resort.  Indeed, Dr. van Heerden filed an extremely detailed Faculty Senate grievance seeking reversal of the defendants' proposed termination of his employment.  He filed internal appeals through upper Administration seeking reversal of the proposed termination of his employment.  The plaintiff also sent formal demand to the defendants prior to institution of litigation.  The plaintiff even filed a formal complaint with AAUP (the American Association of University Professors).

Entirely contrary to the defendants' argument in brief, after all attempts at informal resolution were rejected by the defendants, plaintiff was literally forced to file the instant lawsuit and appropriately seek injunctive relief.  Hence, any argument that immediacy is not present falls flat.  Dr. van Heerden will be terminated, absent injunctive relief afforded, on May 21, 2010.

## 2.  1st Amendment and reprisal claims

It is well-settled that the loss of First Amendment freedoms, even for a moment, constitutes irreparable harm.  *Elrod v. Burns*, 427 U.S. 347, ,373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976). In this case, the evidence will demonstrate that the plaintiff's impending termination is on account of his speech, testimony, and whistle-blowing activities.  The defendant Board and the defendant officials repeatedly threatened plaintiff that if he continued to speak to the press and publicly, he would be terminated.  The defendant Board and the defendant officials engaged in a very public campaign of maligning plaintiff's reputation and standing in the community also in an attempt to stifle and interfere with his free speech rights.  By undercutting the plaintiff's credibility, the quality and character of his speech was rendered utterly ineffective.

As a matter of law, irreparable harm is established where the threatened action serves to interfere and impair the plaintiff's 1st Amendment rights.

In *Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004), the Fifth Circuit clearly reaffirmed that retaliation against an individual, even by third parties, on account of their testimony in a Court proceeding, is illegal. *Kinney* followed the trilogy decisions in *Rainey v. Jackson State College, et al.*, 551 F.2d 672 (5th Cir. 1977), involving protracted litigation wherein a professor was denied employment in retaliation for his testimony for a defendant in a criminal obscenity case. Acknowledged in *Rainey I*, 435 F.2d 1031 (5th Cir. 1970), the sua sponte issuance of an injunction by the Fifth Circuit was not only appropriate but clearly mandated given the intrusion by and trampling of the plaintiff's First Amendment rights by the defendants. Dr. van Heerden will show that the defendants proposed termination and harassment was also on account of his prior sworn testimony.

### 3. 14th Amendment liberty interest

The evidence will additionally show, much akin to that present in *Vergie Lee Valley v. Rapides Parish*, 118 F.3d 1047 (5th Cir. 1997), that defendants' proposed termination of Dr. van Heerden carries with it a significant stigma the taint of which cannot be remedied in money damages.

The notion of 14th Amendment liberty interests derives principally from the seminal decision in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The *Roth* Court concluded that when a public employee is dismissed accompanied by a "charge against him that might seriously damage his standing and associations in the community", the employee is entitled to the due process right to refute the charges and clear his name:

> While this Court has not attempted to define with exactness the liberty. . . guaranteed [by the Fourteenth Amendment], the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the

3

common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized. . . as essential to the orderly pursuit of happiness by free men. . . In a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed. . . There might be cases in which a State refused to reemploy a person under such circumstances that interest in liberty would be implicated. . .

*Roth,* 92 S.Ct. at 2706-2707

The evidence will show that defendants' proposed termination of the plaintiff, a decision made without any input from the Civil Engineering faculty, clearly implicated Dr. van Heerden's liberty interests in his good name and reputation. When handed the letter of termination, defendants specifically advised Dr. van Heerden that the decision was not for "performance" reasons, yet, at the same time, the defendants had continuously issued public statements accusing plaintiff of bad science, not possessing the requisite professional qualifications, and of publicly misrepresenting himself. If not, indeed, for "performance" reasons, then the stigma deliberately disseminated by the defendants was that Dr. van Heerden committed some sort of atrocious professional opprobrium for which the punishment of termination was richly deserved.

It is precisely this type of behavior which yields to 14th Amendment protection against deprivation. In *Vergie Lee Valley*, the Court upheld issuance of an injunction finding the "threat of injury to [the plaintiff's] reputation and her ability to procure comparable employment. . . [was] sufficient to satisfy irreparable injury." *Vergie Lee Valley*, at 1056. In this case, the defendants public accusations against the plaintiff coupled with his sudden proposed termination from employment not only stigmatize his good name and reputation in the community, but permanently thwart his ability to engage in his occupation, pursue his scientific endeavors, or maintain credibility among his peers and in the public light. This irreparable injury remains one that monetary damages

4

cannot satisfy. Rather, affording the plaintiff the ability to remain employment maintains the status quo between the parties and, in part, serves to remove the stigma associated with his abrupt, public, and illegal proposed termination from employment.

### 4, De facto tenure

Based on *undisputed* facts and the governing law, Dr. van Heerden will show a strong likelihood of success on his claim that he had a property interest in continued employment based on accrual of *de facto* tenure pursuant to LSU's governing policies and regulations and that LSU's action in terminating him without notice or hearing and without good cause violated his constitutional right to due process. In opposing Dr. van Heerden's request for a temporary restraining order, LSU contended that Dr. van Heerden was employed under a succession of term appointments with the title of Associate Professor Research which is not a tenure-track position and therefore could not accrue *de facto* tenure. Mem. in Oppos. To Van Heerden's Motion for Temporary Restraining Order ("Mem. in Opp.") LSU's argument ignores the provisions of its own policies and regulations as well as the facts and law that support Dr. van Heerden's due process claim.

The LSU system-wide policy, "Ranks, Provisions, and Policies Governing Appointments and Promotions of the Academic Staff" (PM-23), specifies that initial appointments of Associate Professors may be "for a specific term *though not more than five (5) years of total service on that campus*." Defendants' Exhs. LSU 00062. PM-23 states: "Individuals paid from grant or contract funds do not acquire tenure through the passage of time but may become tenured only by specific individual recommendation through appropriate channels and approval by the President." *Id.* PM-23 states: "*With the exceptions noted above* [pertaining to the maximum period of specific-term

5

appointments and to individuals paid from grant or contract funds], *Associate Professors are tenured and are appointed for an indefinite period of time.*" (Emphasis added.) *Id.* Regulations of the LSU System Board of Supervisors, § 2-7 likewise provide: "Persons holding a professorial rank (Professor, Associate Professor or Assistant Professor) *while being paid by a grant or contract* do not acquire tenure through the passage of time but may become tenured only by specific individual recommendation through appropriate channels and approval by the President."(Emphasis added). *Id.* LSU 00031. § 2-6 fn. 4 states: "Full-time faculty *whose primary responsibility is conducting research and who normally are paid from grant or contract funds* are to be appointed as Assistant Professor-Research, Associate Professor-Research . . . . The faculty in these ranks do not acquire tenure." *Id.* LSU 00030 (Emphasis added.) PM-23 likewise specifies that "only individuals whose primary responsibility is conducting research are to be appointed to [research] ranks" including specifically the position of Associate Professor-Research.

The exception to tenured status stated in the Regulations and PM-23 for faculty whose "primary responsibility" is research cannot apply. Dr. van Heerden worked since October 1, 2000, subject to a single position description. Plaintiff's Exhibits, Letter from Debra Katz to Pratul Ajmera dated 9-24-09 with attached grievance and exhibits ("Grievance"), exh. 4. . His specified duties were defined as including 30% "basic and applied research"; 35% "program development and supervision in the area of natural disasters"; 20% "participation in academic programs" including "course development, instruction, research supervision, thesis and dissertation committee membership and seminars"; and 15% "technical assistance to state and federal agencies . . . ." The caveats in § 2-6 fn. 4 of the LSU Regulations and PM-23 that faculty whose *primary* responsibility is conducting research do not accrue tenure cannot apply.

6

Moreover, since Dr. van Heerden's appointment to CoE effective October 1, 2000—and at all times since 1995—he was paid from state funds and not from grant or contract funds. LSU's Answer admits that the personnel action form that registered Dr. van Heerden's transfer to CEE effective October 1, 2000 specifically reflected that his compensation would come from *state funds* and identified his position as a *teaching* position. Grievance Exh. 4. PM-23's exception to the tenured status of Associate Professors *paid from grant or contract funds* cannot cover Dr. van Heerden's status because he was undisputedly never paid from grant or contracts funds. Moreover, Dr. van Heerden has undisputedly been employed on the same academic-year basis as other academic faculty members rather than on a full calendar year basis as are research faculty.

As of October 1, 2005, Dr. van Heerden had undisputedly completed five years in term appointments at the LSU campus in Baton Rouge. The exception to accrual of tenure over time for research faculty whose primary responsibilities are research and for other faculty paid out of grant or contract funds are inapplicable by their terms. Consistent with his position description, Dr. van Heerden developed and for several years taught a course entitled "Disaster Science and Management (DSM) 2000," part of an undergraduate concentration that LSU is currently expanding to include pursuit of a doctorate degree. He also taught civil engineering seminar courses for graduate students (CEE 7700) and supervised graduate students in CEE. The LSU Graduate Council approved Dr. van Heerden in 2004 for a three-year term as an Associate Member of the LSU Graduate Faculty. The documentation of his nomination, signed by Defendant Voyiadjis on July 12, 2004, lists his work assignment as 20% teaching, 30% research and 50% administration.

Prior to Hurricane Katrina, the LSU administration and CoE were well pleased with Dr. van Heerden's contributions and not only recognized but commended his performance in the service and

teaching components of his position. In 2003, he underwent a formal review by the CEE faculty, documentation of which expressly identified the evaluation as conducted pursuant to the CEE faculty's review of "*tenure track faculty*." The evaluation deemed Dr. van Heerden's performance fully satisfactory with regard to teaching, research and service – the three criteria prescribed for faculty evaluation by LSU personnel policies governing the evaluation of university faculty. *See* "Criteria for Evaluating Academic Performance, and Policy and Procedures on Faculty Appointment, Performance Evaluation, Reappointment/Non-reappointment, Promotion and Tenure, Appeal Procedures," LSU Policy Statement No. PS-36 (Revision No. PS0036.R05, July 1, 1997) ("PS-36"). The review recommended his reappointment for a three-year term. Grievance Exh. 5. By letter of March 17, 2005, then Dean Zaki Bassiouni commended Dr. van Heerden's success in securing funding for Gulf Coast surge modeling and declared: "Your commitment to excellence is evidenced by this appointment, as is your dedication to *teaching, research, and professional service*." Dr. Bassiouni continued: "Through your professional service and academic outreach, you have extended your own knowledge to enhance the lives of others, in addition to motivating your students to follow your lead. We take pride in the accomplishments of our bright and talented faculty members such as yourself, who are an asset to the College as well as the University."

LSU's memorandum opposing the motion for temporary restraining order avoids mention of any of the key facts. LSU ignores that its governing regulations identify research faculty as faculty whose duties are predominantly research and who are normally paid from grant and contract funds. LSU ignores that Dr. van Heerden subject to a position description that specified that research was only a minor, 30% component of his duties; that his appointment was at all times described as a "teaching" appointment; and that he was at all times paid from state funds and

8

employed on an academic year basis like other academic faculty. LSU ignores that PM-23 specifies that associate professors are tenured with the sole exceptions of term appointments up to 5 years and research professors and others paid from grant or contract funds. LSU ignores that PM-23 specifies that "only individuals whose primary responsibility is conducting research are to be appointed to [research] ranks" including the position of Associate Professor-Research.

As of October 1, 2005, Dr. van Heerden was fully entitled to tenure as an Associate Professor by the terms of PM-23. His status is therefore necessarily governed by the rule of PM-23 that Associate Professors "*are tenured and are appointed for an indefinite period of time.* As a matter of Due Process, Dr. van Heerden had a property interest in continued employment and was entitled, as a condition of possible termination of employment, to prior notice of charges and an opportunity to be heard, and was subject to removal only for good and just cause. That being the case, the decision to terminate Dr. van Heerden's employment without a notice of charges stating the cause therefor, and without opportunity for a prior hearing, violated his constitutional right to due process. LSU is equally wrong on the law. LSU's opposition cites nine cases for the proposition that Louisiana courts and the Fifth Circuit have repeatedly rejected claims of de facto tenure. LSU Opposition at 12. The cases cited by LSU hold that the various professors and teachers complaining of denial of tenure and/or termination had failed to show the requisite property interest a due process claim. Not a single one of LSU's cases involved a policy like PM-23 that specifies that particular faculty positions are tenured apart from exceptions for term appointments up to a maximum number of years and individuals paid from grant or contract funds. None involved a claim that the plaintiff had been employed subject to such a policy beyond the maximum for term appointments.

The Supreme Court has long held that a public employee who demonstrates a property or

9

liberty interest in continued employment may not be terminated from employment without the trappings of due process and that accrual of tenure *de facto* based on terms of a university's governing policies and regulations may support the requisite property interest. *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Perry v. Sindermann,* 408 U.S. 593 (1972).

Decisions by Louisiana courts, the Fifth Circuit and federal courts within the Fifth Circuit reflect ample support for the claim that Dr. van Heerden accrued *de facto* tenure through employment beyond LSU's maximum for term appointments. These decisions, while rejecting *de facto* tenure claims on the particular facts presented, recognize that continuation of term appointments beyond a maximum set by a university's governing policy gives rise to *de facto* tenure. *Tetlow v. Loyola University of New Orleans*, 483 So.2d 1242, 1245-46 (La. App. 1986), clearly embraced the doctrine of de facto tenure based on employment beyond the probationary maximum:

> If the faculty member's appointment is allowed to expire at the end of the fourth year, he has not acquired tenure. In essence the "four years" is a probationary period following which the employment is either terminated, *continued as tenured*, or continued on other terms agreed to by the parties. In this case employment was terminated. Dr. Tetlow, therefore, did not acquire tenured status.

(Emphasis added).

*Balseiro v. Castaneda-Zuniga*, 916 So. 2d 1149, 1155 (La. App. 2005), involved a claim that tenure at LSU was automatically conferred through passage of time, again rejecting it only because LSU had in that instance provided notice of non-removal *before commencement of the final year of permissible term appointments when de facto tenure would otherwise have accrued.*

Likewise, *Grimm v. Cates*, 532 F.2d 1034, 1037 (5th Cir. 1976), involved a claim of *de facto* tenure based on the faculty member's claim that his total years of employment exceeded the university's probationary maximum. The court cited fact findings by the trial court that the university's consistent policy had been to exclude all prior service so that plaintiff had not in fact

10

exceeded the probationary maximum and for that reason had not accrued *de facto* tenure.

These decisions, which recognize the validity of a property interest based on accrual of *de facto* tenure, strongly support Dr. van Heerden's likelihood of success on his due process claim. Whereas the university in *Grimm* had a policy of discounting years of prior service, Dr. van Heerden had indisputably completed five years of term appointments in CoE at LSU's Baton Rouge campus as of October 2005. Whereas the universities in *Tetlow* and *Balseiro* providing notice of termination prior to commencement of the respective plaintiffs' last permissible year of term appointment, LSU failed to provide such notice prior to commencement of Dr. van Heerden's fifth year. In the words of *Tetlow*, Dr. van Heerden's employment accordingly "continued as tenured" after October 2005 as a matter of law.

Based on the law and undisputed facts, Dr. van Heerden will plainly show a strong likelihood of success on his due process claim.

As shown above, Dr. van Heerden has a strong likelihood of success on his claim of *de facto* tenure based on LSU's governing policies and regulations. It follows that Dr. van Heerden will suffer irreparable harm through LSU's actions in terminating his pay without due process.

LSU's Opposition to Dr. van Heerden's Motion for a Temporary Restraining Order wrongly assumes that the plaintiff lacks any viable claim to tenure. LSU argues that this case is "analogous" to *Needer v. Rivier College*, 908 F.Supp. 66 (D. N.H. 1995), which held that the plaintiff - an untenured professor who did not claim entitlement to tenure - failed to show irreparable harm to support a preliminary injunction. LSU emphasized that the court "distinguished the plaintiff's situation from one in which a *decision is made against a tenured professor* or one in which a tenure application is denied." LSU Opposition at 18 (emphasis added). This case, where Dr. van Heerden

11

shows a strong likelihood of succeeding on his due process claim, is analogous, not to *Needer*, but to the case it distinguished, *Silva v. University of New Hampshire*, 888 F.Supp. 293 (D. N.H. 1994). The court there held that suspension of a *tenured* professor's pay without due process "constitutes an independent basis for finding that [he] has been and continues to be irreparably harmed in this case", in addition to irreparable harm from the likely violation of his rights of free expression under the First Amendment. *Id.*, at 327.

The same dual consideration support the showing of irreparable harm here.

**CONCLUSION:**

The right of an individual to speak, even in the face of adversity, stands as a bastion of protection between a free society and one encumbered by its own ignorance. Throughout history men and women of science often espoused ideas unpopular for their time, but proven true. One can only imagine what the world would look like if we had all blindly accepted the then-reality that our world was flat.

If you remove from society, and especially academia, the unfettered right of persons to study, to question, and to speak, you are left with only one stream of idea affording no measure of exploring the ocean of possibilities.

Dr. van Heerden's only "crime" was adherence to the notions of scientific inquisitiveness and strength of character. For that, he suffered and continues to suffer the indignities of having his own institution publicly brand him an idiot in an ill-fated attempt to forever banish him from the scientific community at large.

The Federal Courts, in particular, serve as the ultimate protector of our civil rights. In this regard, Dr. van Heerden shows that unless an injunction issues in this case, the harm inflicted upon

12

him will not only be irreparable but immeasurable.

RESPECTFULLY SUBMITTED:

s/Jill L. Craft
JILL L. CRAFT
La. Bar Roll No. 20922
Attorney at Law, LLC
721 North Street
Baton Rouge, Louisiana 70802
Telephone: (225) 663-2612

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on the 14th day of May, 2010, I have served a copy of the above and foregoing Supplement Memorandum in Support of Injunctive Relief using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

  Baton Rouge, Louisiana, this 14th day of May, 2010.

s/Jill L. Craft
Jill L. Craft