# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

IVOR VAN HEERDEN                                     CIVIL ACTION

VERSUS

BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY AND          NO. 10-155-D-M2
AGRICULTURAL AND MECHANICAL
COLLEGE, ET AL

## RULING & ORDER

This matter is before the Court on the Motion to Compel Discovery (R. Doc. 42) filed

by defendants, the Board of Supervisors of Louisiana State University and Agricultural and

Mechanical College ("LSU"), David Constant ("Constant"), George Voyaidjis ("Voyaidjis"),

Robert Twilley ("Twilley"), and Brooks Keel ("Keel")(collectively "defendants"). Plaintiff, Ivor

Van Heerden ("van Heerden" or "plaintiff"), has filed an opposition (R. Doc. 45) to this

motion, in response to which defendants filed a reply memorandum (R. Doc. 48). Plaintiff

has also filed a sur-reply memorandum (R. Doc. 53) concerning defendants' motion.

## FACTS & PROCEDURAL BACKGROUND

Defendants propounded Interrogatories and Requests for Production of Documents

to van Heerden on July 20, 2010.[1]  Plaintiff's counsel requested an informal extension of

---

[1] Plaintiff filed this suit against the defendants on or about February 10, 2010, alleging illegal
reprisal, retaliation for the exercise of his First Amendment rights, violation of his due process rights, and
violation of 42 U.S.C. §1983, §1985, and other state and federal laws. Plaintiff was an employee of the
LSU Board of Supervisors, and at the time of Hurricane Katrina since 2000, he was a member of the
faculty of the College of Engineering at LSU and had served as the Deputy Director of the LSU Hurricane
center since 2000. Plaintiff alleges that, in response to his public criticism of the Federal Emergency
Management Agency and the U.S. Army Corps of Engineers concerning their "failures" related to the
levees and flooding in New Orleans following Hurricane Katrina, defendants subjected him to a campaign
of retaliation and retaliatory harassment, including subjecting him to a new personnel policy that had the
effect of not allowing him to teach, providing him with only a one-year appointment, and establishing

time until September 7, 2010, within which to respond to such discovery requests, which the defendants granted. On September 8, 2010, plaintiff's counsel provided discovery responses to defendants. However, defendants found plaintiff's responses to be deficient, and on September 16, 2010, sent correspondence to plaintiff's counsel identifying the various deficiencies in plaintiff's responses and requested that supplemental responses be submitted to defendants on or before September 24, 2010. Defense counsel subsequently conferred with plaintiff's counsel in person and was advised that plaintiff's supplemental responses would be provided by October 14, 2010. Defense counsel sent plaintiff's counsel a letter dated October 1, 2010, confirming the October 14, 2010 deadline for plaintiff's supplemental responses. However, as of the date that defendants filed the present motion, October 15, 2010, they had not been provided with any supplemental responses by the plaintiffs. Defendants therefore filed the present motion, wherein they contend that plaintiff's responses to the following discovery requests are insufficient: LSU's Interrogatory Nos. 1-2, 5-7, 10-11, 16, 18, 20-22, 24, and 25; LSU's Request for Production Nos. 1, 3, 18-19, 22, 27, 33, and 40; Keel's Interrogatory Nos. 1-2, 4-7, 9-11, and 13; Constant's Interrogatory Nos. 1-5, 7, 9-12, and 14; Twilley's Interrogatory Nos. 1, 2, 6, 13, and 14; and Voyaidjis' Interrogatory Nos. 1-13.

---

performance criteria based solely upon research, which plaintiff contends is inconsistent with the university's PS-36 policy. According to plaintiff, on March 6, 2009, he submitted his performance-review package in support of his application for reappointment for an additional year; however, without awaiting the College of Engineering faculty's review and recommendation, as required by PS-36 or the arrival of a new Dean of the College of Engineering, defendant, Interim Dean David Constant, met with plaintiff on April 9, 2009 and presented him with a letter indicating that his appointment would not be renewed.

Plaintiff filed a motion for preliminary injunctive relief in this Court, requesting that the Board of Supervisors be prohibited from terminating his employment or, alternatively, reinstate his employment and enjoining the defendants from further retaliation or reprisal on account of his alleged whistle-blowing activities. Following a three-day injunction hearing in this Court, plaintiff's motion for preliminary injunctive relief was denied.

## LAW & ANALYSIS

**I.    Applicable legal standards:**

Pursuant to Fed. R. Civ. P. 26(b)(1), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  Fed. R. Civ. P. 26(b)(1).  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action, and relevant information need not be admissible at the trial if the discovery appears "reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  Each interrogatory requesting discoverable information must, to the extent it is not objected to, be answered separately and fully in writing under oath, and an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond.  Fed. R. Civ. P. 33(b)(3); Fed. R. Civ. P. 37(a)(4).  Furthermore, under Rule 33(d), a responding party "has the duty to specify, by category and location, the records from which answers to interrogatories can be derived," and that party must specify "the records that must be reviewed in sufficient detail to enable the interrogating party to locate and identify [the documents] as readily as the responding party could."  Fed. R. Civ. P. 33(d).  If a party fails to fully answer an interrogatory or request for production of documents submitted under Fed. R. Civ. P. 33 and 34, the party seeking the discovery may move for an order compelling an answer to that discovery request pursuant to Fed. R. Civ. P. 37(a)(3)(B).

Finally, Fed. R. Civ. P. 37(a)(5)(A) provides that, if a motion to compel discovery is granted, the Court must, after allowing an opportunity to be heard, require the party whose

conduct necessitated the motion, or the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in bringing the motion. Fed. R. Civ. P. 37(a)(5)(A).[2] If the motion is denied, the court may issue any protective order authorized by Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party opposing the motion its reasonable expenses incurred in opposing the motion, including attorney's fees, unless the motion was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(B). If the motion is granted in part and denied in part, the court may issue any protective order authorized by Rule 26(c) and may, after allowing an opportunity to be heard, apportion the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C).

## II.    LSU's discovery requests:

### (A)    LSU's Interrogatory Nos. 1 and 2:

Interrogatory Nos. 1 and 2 request that plaintiff identify persons with knowledge regarding the facts alleged in the petition and witnesses that plaintiff may call at trial. They also seek to have plaintiff provide a description of the facts and circumstances known by each person identified. Plaintiff's responses identify thirty (30) individuals but fail to describe the facts and circumstances known by each person identified. In his response, plaintiff "reserve[d] the right to supplement and amend [his] listing prior to trial."

In his opposition, plaintiff contends that he has provided LSU with all of the information in his possession at this time and that he will supplement his answers when he

---

[2] The court must not, however, order that payment, if: (1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (2) the opposing party's nondisclosure, response, or objection was substantially justified; or (3) other circumstances make and award of expenses unjust. *Id.*

obtains more information.  He further contends that twenty (20) of the thirty (30) listed witnesses are employees or representatives of the LSU Board, and seven (7) of those witnesses testified during the injunction hearing in this matter in May 2010.  Plaintiff therefore argues that, "if Defendants want factual information about those particular witnesses, it is 'readily available' to Defendants directly from the witnesses themselves."

While it may be true that defendants can obtain factual information from certain of the listed witnesses through informal discovery, that fact does not relieve plaintiff of his obligation to provide defendants with a brief description of the subject matter of the information of which each prospective witness has knowledge.[3]  Although it is overly burdensome to require the plaintiff to provide a summary of *all* facts and circumstances *known* by the listed persons relating to this suit at this early stage in the litigation, as the defendants have requested, plaintiff can certainly provide a brief description of the general topics of each prospective witness' knowledge.  For plaintiff to have listed the individual in response to Interrogatory Nos. 1 and 2, he obviously knows that such individual possesses some relevant information to this suit; thus, his representation in his opposition that he has provided defendant "with all information in his possession at this time" does not appear accurate.  Accordingly, plaintiff should supplement his responses to Interrogatory Nos. 1 and 2 to supply a brief description of the general topics to which each individual may

---

[3] *See, Tift v. Ball*, 2007 WL 3047228 (W.D.Wash. 2007), quoting 6-26 Moore's Federal Practice-Civil §26.22[4][a][ii](Plaintiff had not complied with his initial disclosure obligations under Fed.R.Civ.P. 26(a)(1), where, although he had provided names, addresses, and phone numbers of individuals who were likely to have discoverable information, he had not identified "the subjects of the information."  The court granted the defendant's motion to compel production of that information, explaining that "[t]he disclosing party should provide a brief description of the subject matter of the information each prospective witness has," and while "[i]t is not necessary to provide a detailed narrative of all the facts known to each witness; a brief description of the general topics of each witness' knowledge will suffice").

testify,[4] and to the extent plaintiff is not aware of such information at this time, he must make a statement to that effect in his supplemental responses.[5]

**(B)    LSU's Interrogatory No. 5:**

Interrogatory No. 5 requests that plaintiff identify every policy, rule, procedure, permanent memorandum and/or policy statement that he contends LSU violated as well as a list of facts which support his claim for each such claimed violation. Plaintiff responded as follows: "LSU's tenure and promotion policies and rules identified by plaintiff herein and those produced by defendant in this litigation." While it is permissible, in responding to a discovery request, to refer to other specifically identified discovery answers, the undersigned finds that plaintiff's reference to all policies and rules "identified

---

[4] Although plaintiff relies upon *Hickman v. Taylor*, 329 U.S. 495 (1947) and its progeny for the proposition that forcing a party to summarize the facts obtained from each person interviewed in anticipation of litigation impermissibly reveals protected work-product, for which the defendants have not shown a need in this case, the undersigned does not find that LSU's Interrogatory Nos. 1 and 2 seek protected work-product. The work-product doctrine is designed to guard only against the divulging of an attorney's legal impressions and strategies; it cannot be used to protect the underlying facts found within work-product. *U.S. v. Dean Foods Co.*, 2010 WL 3980185 (E.D.Wis. 2010), citing *Hickman*, at 507. LSU's Interrogatory Nos. 1 and 2 do not seek plaintiff's counsel's legal impressions and strategies concerning the facts in this case; instead, they simply seek an identification of the witnesses that plaintiff may call to support his claims and a description of the facts known by such witnesses. Plaintiff cannot extend work-product protection to the facts which form the basis of his suit. *See, Dean Foods*, at *2 (Defendant is not requesting that plaintiffs turn over their attorneys' memoranda or notes resulting from third-party interviews; rather, it is seeking only the identities of interviewees and the facts obtained from the interviews that form the basis of the plaintiffs' claims, to which work-product protection does not extend).

[5] Although defendants' discovery requests are detailed and require specific explanations on the part of plaintiff as to his various claims against each of the named defendants, the undersigned agrees with defendants that such requests are permissible under the broad scope of discovery permitted by the Federal Rules of Civil Procedure in order for the defendants to clarify the nature and extent of plaintiff's claims against each of them individually. As defendants point out in their reply memorandum, such detailed discovery requests were necessitated by the fact that plaintiff's 31-page petition lumps together all five (5) named defendants with respect to each of his allegations and claims and does not specify what particular acts were taken by each defendant. Defendants are entitled to ascertain through discovery a specific description of how they, individually, committed the acts or omissions alleged in the complaint. Having named the individuals as defendants, plaintiff can certainly provide basic descriptions of the particular acts or omissions that they allegedly took to violate his rights, and then more specific details concerning those acts or omissions can be developed through oral discovery depositions.

6

by plaintiff herein" and "produced by defendant in this litigation" is overly vague. Plaintiff is at least required to identify the precise discovery responses that contain the policies and rules in question and to direct defendant to particular documents (for example, by bates or exhibit number)[6] that it has produced in this litigation, which are responsive to Interrogatory No. 5. The fact that plaintiff is capable of doing so is evident from his arguments in his opposition memorandum, wherein he specifically refers to particular policies listed in plaintiff's response to LSU's Interrogatory No. 3 and to certain documents within defendant's initial disclosures and within defendant's exhibits for the injunction hearing that are responsive to Interrogatory No. 5. *See*, Plaintiff's opposition, R. Doc. 45, p. 6.[7] Finally, as to LSU's request for a list of facts supporting plaintiff's claims that the listed policies were violated by LSU, plaintiff argues generally that his 31-page Petition supplies such facts to defendants. The undersigned also finds that response to be overly broad. Plaintiff should supplement his response to Interrogatory No. 5 to identify those specific polices, rules, etc. that he contends LSU has violated and provide a brief description of how such violation(s)

---

[6] *See, Umbach v. Carrington Inv. Partners (US), LP*, 2009 WL 3287537 (D.Conn. 2009)(noting that defendants' response complied with Rule 33(d)(1) in that it specifically identified the responsive documents by bates number, which enabled the plaintiff to locate and identify the documents); *Synventive Molding Solutions, Inc. v. Husky Injection Molding*, 262 F.R.D. 365 (D.Vt. 2009)(ordering the plaintiff to revise its interrogatory responses to include bates numbers for responsive documents because the failure to include such numbers was "further evidence of the gamesmanship engaged in by both parties," since the production of relevant bates numbers was required, and the burden of doing so is de minimus); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, 2008 WL 4162445 (N.D.Cal 2008)(defendant satisfied its discovery obligations under Rule 33(d) by designating produced documents by bates number); *C.T. v. Liberal School Dist*, 2008 WL 394217 (D.Kan. 2008)(Bates numbers needed to comply with Rule 33(d)); *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 2007 WL 1514876 (N.D.Cal. 2007); *Bryant v. Mattel, Inc.*, 2007 WL 5432960 (C.D. Cal. 2007)(same); *Eaton v. ZF Meritor LLC*, 2006 WL 587833 (E.D.Mich. 2006)(same).

[7] Although plaintiff attempts to excuse his failure to provide a sufficient answer to Interrogatory No. 5 by referring to defendants' own, comparable deficiencies in responding to plaintiff's discovery requests in this matter, such "finger-pointing" commentary does not justify plaintiff's inadequate response to Interrogatory No. 5. Plaintiff must still supply an answer to that discovery request that complies with applicable federal rules, and to the extent he has complaints regarding defendant's discovery responses, those complaints should be the subject of a separate motion to compel.

occurred.

**(C)    LSU's Interrogatory No. 6:**

Interrogatory No. 6 asks that the plaintiff describe in detail each and every act by LSU that he contends was part of the "multi-year campaign of retaliatory harassment" alleged in Paragraph 3 of the Petition.  The interrogatory further seeks to have plaintiff provide the identity of each alleged actor, the date of each act, and the names of all witnesses or persons with information or knowledge of each act.  Plaintiff responded as follows:

> I was targeted because of my protected activity and whistle blowing regarding systematic flood protection failures and their causes.  Specifically I was labeled a trouble maker, removed from the Hurricane Center, denied access to research resources and publicly branded by the Defendant as incompetent.  Finally, I was wrongfully terminated from my employment.  I also incorporated my testimony at the Injunction hearing at pages 31-36, 45-47, 56-65.  See Answer to Interrogatory No. 3 and documents attached herein.

*See*, Plaintiff's Response to Interrogatory No. 6, Exhibit F to defendants' motion.

Defendants complain that such response does not provide any specifics as to the purported acts which constitute the "multi-year campaign," nor does it identify the actors, the dates involved, or the witnesses to the acts.  Defendants also complain that the referenced pages from the injunction hearing transcript only identify "one email from Dokka to Ruffner" as well as "Ruffner's letter to the editor of the New York Times as purported acts."

Defendants' arguments are not entirely accurate.  The undersigned has reviewed the transcript pages identified and finds that they do specifically identify several instances, including specific actors and dates, that plaintiff considers to be part of a campaign of

8

retaliation and harassment against him by LSU. Specifically, while pages 31-36 of the transcript do discuss an email from Dr. Roy Dokka of LSU to Dr. Michael Ruffner, Vice Chancellor for Information Services and Public Relations at LSU, as defendants contend, such email contained statements that plaintiff testified were in reference to him and were critical of him and his knowledge/expertise and that he was "astounded" by the statements made in the email. Additionally, pages 45-47 of the transcript specifically discuss an email dated December 8, 2005 by one of the named defendants in this matter (and plaintiff's former "de facto superior"), Twilley, that was sent to Sidney Coffee (who headed Governor Blanco's Office of Coastal Affairs) and that copied Harold Silverman (also of the Office of Coastal Affairs/Department of Natural Resources), which discussed plaintiff and the fact that Twilley wanted the Governor to know that plaintiff was not involved in the Coastal Restoration Team that helped the Corps of Engineers develop the Chief Engineers' report. The email also questioned plaintiff's qualifications to provide messages from higher education to state officials and noted that plaintiff was not to "represent the wider coastal science and engineering community" in that regard. *See*, Injunction hearing transcript, pp. 46-47.[8]

Finally, pages 56-65 of the transcript address a letter to the editor of the New York Times sent from Ruffner dated May 31, 2006, addressing a book published by the plaintiff eight (8) days earlier, which article the plaintiff testified was designed to tarnish his name and his book. Because the identified transcript pages describe several instances of alleged

---

[8] Although the undersigned has not been provided with a copy of page 48 of the injunction hearing transcript, according to plaintiff, he testified on that page that Dr. Twilley's email to Sidney Coffee and Harold Silverman was meant to imply to the Governor's office that plaintiff "didn't know what he was talking about." *See*, Plaintiff's opposition, R. Doc. 45, p. 9.

retaliatory conduct or harassment on the part of specifically identified individuals on particular dates, the undersigned finds that plaintiff's response to LSU's Interrogatory No. 6 is sufficient to the extent those three (3) instances are the only instances of retaliatory conduct/harassment that plaintiff is alleging in this suit. To the extent there are additional instances, plaintiff shall supplement his response to provide the requested information about those other instances.

**(D)     LSU's Interrogatory No. 7:**

Interrogatory No. 7 requests that plaintiff describe in detail each and every occurrence that LSU "publicly branded [him] as incompetent and irresponsible" and/or "publically abused [his] reputation." It further requests that plaintiff provide the date of each occurrence, the name of the actor(s) and the names of persons to whom the statements were communicated. Plaintiff responded by referring to his answer to Interrogatory No. 6 and by again referencing pages 31-36, 45-47, and 56-65 of the transcript of the injunction hearing. Because the cited transcript pages identify specific instances where plaintiff contends that particular representatives of LSU criticized his qualifications and tried to tarnish his reputation, the undersigned also finds that his response to Interrogatory No. 7 is adequate to the extent the three (3) instances discussed on those transcript pages are the only instances where he alleges LSU publicly branded him as incompetent and publicly abused his reputation. If there are other instances, plaintiff shall supplement his response accordingly.

**(E)     LSU's Interrogatory No. 10:**

Interrogatory No. 10 requests that plaintiff provide specifics regarding purported attempts by Silverman and Twilley "to intercede with the Louisiana Governor's office to

prevent the Team Louisiana study from going forward under Dr. Van Heerden's leadership" and asks for specific dates of such attempts and the names of witnesses. Plaintiff's response refers to his answers to Interrogatory Nos. 3, 6, 7, and 8 and to pages 99-104 of the injunction hearing transcript. As discussed above, pages 45-47 of the injunction hearing transcript, which were referred to in plaintiff's responses to Interrogatory Nos. 6 and 7, discuss an email from Twilley, which copied Silverman, that discussed messages that were to be communicated to the Governor about plaintiff's involvement with the Coastal Restoration Team; as such, reference to those interrogatory responses and transcript pages by the plaintiff was appropriate. Moreover, pages 99-104 of the hearing transcript discuss the fact that plaintiff was forbidden by Dr. Twilley from releasing his storm surge data and models for Hurricane Gustav to state agencies and the Governor's Office (and was instructed to remove such data from a website concerning Hurricane Ike). Plaintiff's references to the cited transcript pages are sufficiently responsive to Interrogatory No. 10 at this stage of discovery; to the extent LSU seeks further information concerning Silverman's and Twilley's alleged efforts to prevent the Team Louisiana study from going forward under plaintiff's leadership, that information can be ascertained through oral depositions of plaintiff and those individuals.

**(F)    LSU's Interrogatory No. 11:**

Interrogatory No. 11 seeks to have plaintiff identify each alleged retaliatory action that he contends in Paragraph 33 of the Petition was taken by the LSU administration and College of Engineering "to discredit and marginalize" him. According to Paragraph 33 of the Petition, in late 2006, then Chancellor Sean O'Keele declined a request to support plaintiff's nomination for the 2007 National Wetlands Award, even though Hazel Sinclair,

a local wetlands activist, attempted to mobilize support for plaintiff's nomination on his role in the forensic investigation concerning the failure of the New Orleans levees. *See*, R. Doc. 1, ¶33.

In response to Interrogatory No. 11, plaintiff referred to his answers to Interrogatory Nos. 3, 6, 7, 8, and 10 and also to pages 31-36, 45-47, and 56-65 of the injunction hearing transcript. None of those responses address the allegations in Paragraph 33 of the Petition relating to former Chancellor O'Keefe's decision not to support plaintiff's nomination for the 2007 National Wetlands Award. To the extent plaintiff alleges that there are other retaliatory actions by LSU administration and the College of Engineering in relation to that decision, plaintiff shall submit a supplemental response to Interrogatory No. 11 supplying that information, including the names of any specific actors involved, the dates of any identified acts, and the names of witnesses to those acts.

(G)    **LSU's Interrogatory No. 16:**

Interrogatory No. 16 requests that plaintiff set forth in detail the basis for his claim that he was entitled to *de facto* tenure as alleged in Paragraph 70 of the Petition, including the names of all witnesses or persons with information concerning or knowledge of the alleged granting of de facto tenure. Plaintiff responded by referring to his answer to Interrogatory No. 3, which is a list of all documents that he may introduce at the trial of this matter. He also responds that he "had been granted tenure as reflected in LSU's PAF documents and also including my transfer of COE documentation." Plaintiff's response is overly vague, as is evident from the fact that he had to more thoroughly explain and identify precise, responsive documents within his opposition to the present motion. Specifically, in his opposition, plaintiff explains that PAF stands for "Personnel Action Form," and those

documents were produced to defendants in response to Interrogatory No. 3 as an attachment to an "Email to Pratul Ajmerra from Mr. Edlman dated 12-17-09 with attachments" (Document No. 8 listed in response to Interrogatory No. 3) and as "Document produced by LSU in response to Public Record Request" (Document No. 18 listed in response to Interrogatory No. 3). Plaintiff further explains that additional responsive documents are contained in the "public record request" documents identified in his response to Interrogatory No. 3, including the Defendant Board's internal memoranda as to plaintiff's transfer to the College of Engineering dated September and October 2000. Plaintiff, however, has failed to specifically identify (by bates number or otherwise) those documents and has failed to provide the names of any individuals who have information concerning the alleged granting of *de facto* tenure. Although he indicates that the internal memoranda and PAF forms (that are referenced for the first time in his opposition) contain the names of individuals with information concerning his *de facto* tenure, such response is insufficient. Defendants should not be required to sift through documents to ascertain the names of individuals that they have specifically requested. Accordingly, plaintiff should supply defendants with a supplemental response to Interrogatory No. 16 specifically identifying by bates or exhibit number those documents supporting his claim of *de facto* tenure and listing the names of the individuals who allegedly have knowledge of such tenure.

       **(H)    LSU's Interrogatory No. 18:**

Interrogatory No. 18 seeks to have plaintiff set forth in detail the manner in which LSU breached its contract with him, as alleged in Paragraph 82 of the Petition, and requests that he include the specific provision of the contract breached, the date of each

alleged breach, and the individual who he alleges breached the contract on behalf of LSU. In his response, plaintiff refers to his answers to Interrogatory Nos. 3 and 16 as well as to pp. 93-98 and 106-111 of the injunction hearing transcript. As mentioned above, plaintiff's response to Interrogatory No. 3 simply identifies all exhibits that he may introduce at the trial of this matter. Thus, his reference to that response is insufficient. His response to Interrogatory No. 16 relates to his claim of *de facto* tenure and does not specifically address how LSU breached any contracts with him; accordingly, reference to that response is likewise deficient. Plaintiff has not produced a copy of pages 93-98 of the hearing transcript for the Court to determine whether that excerpt discusses a contractual breach by LSU. Finally, pages 106-111 of the hearing transcript discuss a letter dated April 3, 2009, wherein plaintiff was advised that his contract of employment with LSU would not be renewed beyond May 21, 2010, and a meeting that plaintiff had with Interim Dean David Constant, Professor Chip Delzell of the Math Department, and Assistant Dean Waggenspack of the College of Engineering, wherein plaintiff was given that letter, informed of his termination, and told that, if he had any inquiries or appeals relative to his termination, they were to be directed to Interim Dean Constant. The excerpt does not specifically explain how LSU allegedly breached plaintiff's employment contract nor does it identify specific provisions of the contract that were allegedly breached, the dates of any alleged breaches, or the individuals that plaintiff contends breached the contract on behalf of LSU. Accordingly, plaintiff shall produce a supplemental response to LSU's Interrogatory No. 18 supplying that information.

### (I) LSU's Interrogatory No. 20:

Interrogatory No. 20 requests that plaintiff set forth with specificity the manner in

which LSU engaged in "illegal reprisal," as alleged in Paragraph 86 of the Petition.  For each act of "illegal reprisal," it is requested that plaintiff identify the individual who engaged in the reprisal, the date of the act, and the identity of any witnesses to such act.  Paragraph 86 alleges that LSU engaged in "illegal reprisal" directed at Petitioner on account of Petitioner's having provided testimony and evidence to the State of Louisiana, the Louisiana Governor's Office, the United States Congress, the Courts of this State, and the Federal Courts, all of which were conducting an investigation, hearing or inquiry into violations of law.  Plaintiff also alleges, in Paragraph 86, that LSU engaged in "illegal reprisal" on account of his objections and refusals to participate in an employment action or practice in violation of the Louisiana and U.S. Constitutions and on account of his disclosure and/or threatened disclosure of workplace acts or practices in violation of state law and the Louisiana Constitution.

In response to LSU's request for a specific identification of the acts of alleged "illegal reprisal" and the actors involved, Plaintiff simply referred to his answer to Interrogatory No. 3, which lists all of the exhibits that plaintiff may introduce at the trial of this matter.  Such response is insufficient and should be supplemented to specifically provide the information requested by LSU.

**(J)    LSU's Interrogatory No. 21:**

Interrogatory No. 21 asks that plaintiff describe the alleged "severe and extreme emotional distress" that he contends he suffered and to identify any persons who have knowledge of said injuries and any health care providers who have provided treatment for his alleged emotional distress, along with the dates of any such treatment.  Plaintiff responded that his firing by LSU has "caused [him] enormous emotional stress, lack of

sleep and other problems." He further indicates that, "[t]o date, [he has] not taken [his] emotional stress issues to any doctors, etc, have used natural supplements." Plaintiff has fully responded to LSU's request in that he has described the extent of his emotional distress. Since he has not seen any health care providers in connection with his alleged distress, he cannot identify any such providers or treatment dates. Accordingly, no further response to this interrogatory is required at this time.

**(K)    LSU's Interrogatory No. 22:**

Interrogatory No. 22 requests a full and detailed description of plaintiff's "past and future lost earnings and wages," "loss of employment," "loss of employment capacity," and "loss of employment opportunities," as alleged in Paragraph 89 of the Petition. It requests a calculation of such alleged damages as well as the identity of all persons with knowledge of said damages. Plaintiff responded that the interrogatory had "been discussed previously," that "much of this is still to be determined," and that he "[has] not found an academic position in Louisiana." In his opposition to the present motion, plaintiff contends that a computation of his damages at this stage of the litigation is premature since discovery has recently begun.

LSU's request for a computation of each category of damages claimed by plaintiff is not premature and is, in fact, required to be produced as part of plaintiff's Rule 26(a) initial disclosures. *See*, Fed. R. Civ. P. 26(a)(1)(A)(iii)("Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties: (iii) a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material,

16

unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered"). Thus, plaintiff should supplement his response to Interrogatory No. 22 to supply a computation of each category of damages identified in that request and an identification of any supporting documents.

**(L)    LSU's Interrogatory No. 24:**

Interrogatory No. 24 requests an itemization of every other element of damages plaintiff seeks, including a brief description of the item of damage, the total amount claimed, and the method or formula used to compute that amount, including the time period over which the amount should be computed. If the dollar amount of any item of damage is not yet known, LSU asks that plaintiff state the method or formula by which he contends such amount should be computed and the time period over which he contends such amount should be computed. Plaintiff simply responded that this interrogatory "cannot be answered at this time" and "will have to wait for trial and jury's decision." Considering plaintiff's Rule 26(a)(1)(A)(iii) initial disclosure obligation to provide a computation of every category of damages he is claiming, such response is insufficient. While it may not be possible at this time for plaintiff to specifically identify a dollar amount for each category of damages claimed, he should at least be able to provide LSU with the basic method or formula by which he contends his damages should be calculated, and he should be able to identify the time period for which he is claiming damages. Plaintiff's response should be supplemented accordingly.

**(M)    LSU's Interrogatory No. 25:**

Interrogatory No. 25 seeks to have plaintiff identify communications between himself

(or his attorney or other representative) and members of the media between April 1, 2009 to the present regarding any of the events or issues that are the subject matter of this lawsuit. LSU also seeks the date of each communication identified, the name of the person contacted, whether plaintiff (or his representative) or the media representative initiated the contact, and the factual substance of the communication. Plaintiff responded by stating that he "cannot speak for [his] attorneys." He further indicated that he does not have access to LSU emails but that he is trying to "pull AOL emails off [his] old computer at home and will supply same once [he's] successful." Finally, he indicates that there are no written notes concerning such communications but that "much" of the conversations occurred via cell phone.

LSU expresses no specific complaints with respect to plaintiff's response, and it appears that plaintiff is in the process of locating certain emails that would provide specific dates and descriptions of communications that he had with the media during the time period in question. To the extent those emails are the only information plaintiff has in his possession responsive to this interrogatory and to the extent those emails are not privileged, they should be produced to LSU with plaintiff's supplemental responses, along with a certification by plaintiff that he possesses no other information responsive to this request. Plaintiff's counsel can also supply the requested information relative to any communications he/she had with the media during the specified time period in any supplemental responses produced by the plaintiff.

### (N) LSU's Request for Production No. 1:

Defendants contend that plaintiff has failed to respond to Item 13 of this request for production, which seeks "an email chain to/from Jerry McKernan and others dated 4-12-10"

in plaintiff's answer to Interrogatory No. 3 and referenced in plaintiff's response to Request for Production No. 1. In his opposition, however, plaintiff contends that LSU was, in fact, provided with a copy of that email chain because it was produced as Item 13 in the injunction hearing exhibit book and as Item 13 in initial disclosures. According to plaintiff, the identity of this email chain had a typographical error, in that it was inadvertently dated 4-12-10, instead of 7-19-07. Plaintiff further states, in his opposition, that this document can be found on the CD provided to defense counsel in response to defendant's discovery requests. Thus, it appears that defendants' complaint concerning Request for Production No. 1 has been resolved, and no further response by the plaintiff is required.

**(O)    LSU's Request for Production No. 3:**

Defendants complain that plaintiff has failed to provide a copy of a tape (and any enhancements thereof) that is referenced in his response to Request for Production No. 3. In his opposition, plaintiff indicates that he "intends to supplement his response as indicated in his answer, 'I will get it and make a copy and supply shortly'." Plaintiff should provide a copy of the tape in question (and any enhancements thereof) within twenty (20) days of this Order, along with his other supplemental discovery responses.

**(P)    LSU's Request for Production No. 18:**

Request for Production No. 18 seeks all documents, contracts, agreements or other communications that in any way relate to plaintiff's relationship with Polaris Applied Sciences and/or any other entity to whom he has provided services since May 21, 2010. Plaintiff objected to such request on the basis of the work product doctrine and attorney-client privilege. He further states that Polaris is a sub-contractor for British Petroleum, which is involved in litigation. Subject to and without waiving his objections, he indicated

19

that he subpoenaed non-privileged documents from Polaris and produced them.  Plaintiff's response is incomplete, however, because he has failed to produce a privilege log describing the nature of any Polaris documents that he has withheld on the basis of privilege, in accordance with Fed. R. Civ. P. 26(b)(5).[9]  Accordingly, plaintiff shall supplement his response to Request for Production No. 18 with the required privilege log.

### (Q)    LSU's Request for Production No. 19:

Request for Production No. 19 seeks production of documents showing any income plaintiff has received for consulting, employment, or the provision of his services in any manner since May 21, 2010.  In response, plaintiff referred to his response to Request for Production No. 18 and also indicated that he "consulted with Mr. John Smith with McKernan Law [F]irm in Baton Rouge and Ms. Anisa Gilbert, Attorney at Law, New York City, NY."  Defendants contend that they are entitled to any documents relating to such consults; however, plaintiff asserts in his opposition that such documents are privileged because "MRGO [Mississippi River Gulf Outlet] litigation is ongoing."  Plaintiff's response is again insufficient because he has failed to produce a privilege log describing the nature of the responsive documents he has withheld, as required by Rule 26(b)(5), and he should therefore supply a supplemental response which includes that information.

### (R)    LSU's Request for Production No. 22:

Request for Production No. 22 requests that plaintiff produce all documents relating to possible service by him as an expert and/or to his service as a non-testifying expert in

---

[9] Rule 26(b)(5) requires that, if an objection is asserted on the basis of privilege, the responding party must:  (1) expressly make that claim; and (2) describe (in a privilege log) the nature of the documents, communications, tangible things not produced or disclosed in a manner that, without revealing information alleged to be privileged or protected, will enable the other parties to assess the claim of privilege or protection.

any litigation against the Corps involving the Mississippi River Gulf Outlet. Plaintiff objected to the production of such documents on grounds of work-product and attorney-client privilege and indicated that such documents would be in the possession of plaintiff's counsel in the MRGO litigation, Mr. Bruno, Bruno & Bruno, New Orleans, Louisiana. As with his responses to Request for Production Nos. 18 and 19, plaintiff failed to produce a privilege log concerning the documents responsive to Request No. 22 that have been withheld on grounds of privilege, and he should supplement his response accordingly.

### (S)    LSU's Request for Production No. 27:

Request for Production No. 27 seeks production of all documents provided by plaintiff or any person acting on plaintiff's behalf to the AAUP and all documents provided to plaintiff or any person acting on plaintiff's behalf by the AAUP from August 2005 to the present. Although plaintiff's response states, "see attached AAUP documents," LSU contends that no such documents were produced. In his opposition, plaintiff states that he provided the AAUP documents to defendants on the CD supplied with his discovery responses. He specifically identifies a letter dated January 28, 2010 from B. Robert Kreiser to Dr. Michael V. Martin, which was identified as Item 14 in his Response to Interrogatory No. 3. He also attached the letter as Exhibit F to his opposition memorandum. Since it appears that the AAUP document in question has been supplied to LSU, no further response to this request is required of plaintiff.

### (T)    LSU's Request for Production No. 33:

Request for Production No. 33 seeks production of all documents that refer or otherwise pertain to the New York Times article of May 30, 2006, John Schwartz, "Ivor van Heerden's 'Storm' Draws Fire at L.S.U.," including but not limited to all communications

21

between plaintiff and John Schwartz. Plaintiff's response refers to "additional correspondence between plaintiff and Mr. Schwartz attached hereto," but LSU contends that he did not produce those additional documents. In his opposition, plaintiff indicates that the documents were produced as part of Item 15 of Plaintiff's response to Interrogatory No. 3. Accordingly, no further response to this request is necessary.

### (U) LSU's Request for Production No. 40:

Request for Production No. 40 seeks production of all documents pertaining to any communications by plaintiff (or on his behalf) with any representative of the media from April 1, 2009 to the present regarding any of the events or issues that are the subject of this litigation. Plaintiff objected to such production on the ground that it is overly broad and overly burdensome.[10] He further stated that he has "given hundreds of interviews regarding Katrina, the levee failures, MRGO and his termination." In his opposition, plaintiff also notes that he produced news articles in his Initial Disclosures and identified a newspaper and internet article (in globo) in Item 15 of his response to Interrogatory No. 3.

The undersigned agrees with plaintiff that LSU's request for production of "*all documents* pertaining to *any communications*" to "*any representative*" of the media concerning "*any of the events or issues*" that are the subject of this suit is an overly broad request, particularly considering plaintiff's representation in his response that he has been interviewed "hundreds" of times in connection with issues relating to this suit. LSU should more narrowly tailor this request to seek particular types of documents, such as articles or interviews that have actually been published, relating to specified subjects that are at issue

---

[10] Plaintiff did not, however, assert any objections to LSU's related Interrogatory No. 25, and any such objections at this point are therefore deemed waived.

in this litigation.  Plaintiff is not required to provide any further response until the request is narrowed in those respects.

**III.     Discovery requests of Keel, Constant, Twilley, and Voyaidjis:**

**(A)     Interrogatory No.1 by Keel, Constant, Twilley and Voyaidjis:**

Interrogatory No. 1 of the discovery requests propounded to Keel, Constant, Twilley, and Voyaidjis seeks to have plaintiff describe in detail each and every act by those individuals that he contends was part of the "multi-year campaign of retaliatory harassment" alleged in Paragraph 3 of the Petition.  It further requests that plaintiff describe the role that those individuals played in each act identified, the dates, and the names of all witnesses with information and knowledge regarding each act.  Plaintiff responded to Interrogatory No. 1 by stating that he was "targeted because of [his] protected activity and whistle blowing regarding systematic flood protection failures . . ."  Plaintiff also refers to pages 31-36, 45-47, and 56-65 of the injunction hearing transcript.

Defendants complain that such response provides no specifics of the purported acts by each individual and does not provide the dates or identity of any witnesses to any acts by those individuals.  Although, as discussed above, pages 45-47 of the injunction hearing transcript do reference an email by Twilley questioning plaintiff's qualifications to provide messages from higher education to state officials, the cited transcript pages do not otherwise reference any specific retaliatory or harassing conduct by Keel, Constant, or Voyaidjis.  Accordingly, plaintiff's response to Interrogatory No. 1 propounded by each of those defendants should be supplemented to describe the alleged specific acts of retaliatory harassment by those individuals, and to the extent the alleged acts of Twilley involve conduct beyond the email discussed on pages 45-47 of the injunction hearing

transcript, that information should also be provided in a supplemental response.

**(B)    Interrogatory No. 2 by Keel, Constant, Twilley, and Voyaidjis:**

Interrogatory No. 2 of the discovery requests propounded by Keel, Constant, Twilley, and Voyaidjis requests that plaintiff describe in detail each and every occurrence that "publicly branded [him] as incompetent and irresponsible" and/or "publicly abus[ed his] reputation," etc.  It further requests that plaintiff set forth the nature of those statements made by the named individuals, the date of each occurrence, and the individuals to whom the statements were communicated.  In his response, plaintiff refers to his answers to Interrogatory Nos. 3 and 6.  Reference to his response to Interrogatory No. 3 is not sufficiently responsive because that is simply a listing of all exhibits he may rely upon in the case.[11]  Moreover, reference to his response to Interrogatory No. 6 is likewise deficient for the reasons stated above.  Plaintiff shall supplement his response and provide details concerning the alleged occurrences, other than the Twilley email discussed on pages 45-47 of the hearing transcript, wherein Keel, Constant, Twilley, and Voyaidjis publicly branded him as incompetent and publicly abused his reputation.

**(C)    Interrogatory No. 3 by Constant  and Voyiadjis:**

Interrogatory No. 3 requests that plaintiff describe in detail each occurrence wherein Constant and Voyiadjis banned him from working with government agencies, as alleged in Paragraph 3 of the Petition.  Plaintiff referred to his answers to Interrogatory Nos. 6 and

---

[11] Although, throughout his opposition, plaintiff refers to specific "items" within his response to Interrogatory No. 3 that are responsive to different discovery requests, such specific references are made for the first time in his opposition and should have been made in his original discovery responses.  His general reference, within his original discovery responses, to his response to Interrogatory No. 3 and to other interrogatories is insufficient to direct the defendants to the particular documents that support his claims and resulted in the filing of this motion to compel.

7 and certain pages of the injunction hearing transcript, none of which reference Constant or Voyiadjis or any acts by them.  Plaintiff should supplement his responses and describe any specific acts by Constant and Voyiadjis that were taken to ban him from working with government agencies.

      **(D)**      **Interrogatory No. 4 by Keel, Constant, and Voyiadjis:**

Interrogatory No. 4 requests that plaintiff describe any alleged retaliatory actions by Keel, Constant, and Voyiadjis against him and to provide the dates of each action as well as the names of any witnesses.  Plaintiff refers to his answers to Interrogatory Nos. 3 and 6, 7, 8, and 10, which, as discussed below, are deficient, and to pages 31-36, 45-47, and 56-65 of the injunction hearing transcript, none of which reference any specific acts by Keel, Constant, and Voyiadjis.  Accordingly, plaintiff should supplement this response by describing any specific retaliatory actions that those individuals took against him, including the approximate dates of those actions and the names of any witnesses thereto.

      **(E)**      **Interrogatory No. 5 by Keel, Constant, and Voyaidjis:**

Interrogatory No. 5 seeks to have plaintiff identify each instance in which Keel, Constant, and Voyaidjis prohibited him from testifying as an expert, as alleged in Paragraph 41 of the Petition, including details regarding the persons involved and the dates and identity of witnesses.  Plaintiff responded by referring to his answers to Interrogatory Nos. 3, 6, 7, 8, 10, and 11.  Plaintiff also references pages 70-80 of the injunction hearing transcript.  The undersigned agrees with defendants that plaintiff's response is deficient because the referenced interrogatory responses and transcript pages do not specifically describe a single instance in which Keel, Constant, or Voyaidjis prohibited plaintiff from testifying as an expert.  Although pages 77-80 of the injunction hearing transcript discuss

plaintiff's request to obtain permission from LSU to serve as an expert witness in the Mississippi River Gulf Outlet litigation and the denial of that request, they do not contain specific information about any involvement of Keel, Constant, and Voyaidjis in that denial. Plaintiff should therefore produce a supplemental response to Interrogatory No. 5 indicating what involvement, if any, those individuals had in prohibiting him from testifying as an expert witness.

(F) **Interrogatory Nos. 6, 7, 9, 10, 11, and 13 by Keel, Constant, and Voyaidjis and Interrogatory Nos. 6 and 13 by Twilley:**

Interrogatory Nos. 6, 7, 9, 10, 11 and 13 request that plaintiff: (1) identify each alleged act of retaliation and/or harassment against him by the above individuals on account of the "exercise of [his] First Amendment Rights," as alleged in Paragraphs 57 and 58 of the Petition; (2) identify each alleged violation of plaintiff's Fourteenth Amendment Liberty Interest Rights by the above individuals, as alleged in Paragraphs 63 and 64 of the Petition; (3) state the basis for his allegations in Paragraph 64 of the Petition that the above individuals excluded plaintiff from participating in storm surge modeling; (4) state the basis for plaintiff's allegation in Paragraph 64 of the Petition that the above individuals stripped plaintiff of the opportunity to teach and/or removed him from the tenure track; (5) state the basis upon which he alleged in Paragraph 64 of the Petition that the above individuals refused him the ability to work in gainful employment on account of his engagement in a protected activity; and (6) provide the facts supporting his allegation in Paragraphs 83 and 84 of the Petition that the above individuals publicly stated with malice that plaintiff was "incompetent, had disseminated irresponsible and wrong information to the public, had mislead the public, and lacked scientific experience." In response, plaintiff refers to several

of his other discovery responses and various pages of the injunction hearing transcript, which make no reference to any specific acts by Keel, Constant, or Voyiadjis related to the above allegations. Plaintiff should therefore supplement his responses to these interrogatories by describing the specific acts, if any, that Keel, Constant, and Voyiadjis took in connection with the allegations set forth in Paragraphs 57-58, 63-64, and 83-84 of the Petition.

**(G)    Interrogatory No. 8 by Voyiadjis:**

Interrogatory No. 8 by Voyiadjis requests that plaintiff set forth in detail facts that would support his allegation that Voiadjis "exhibited an evil motive or intent" or "reckless disregard" or "callous indifference" to plaintiff's constitutionally protected rights, as set forth in Paragraph 62, 66, and 73 of the Petition. Plaintiff responded by referring to Interrogatory No. 3 and to pages 31-36, 38-39, 56-65, 75-76 and 99-104 of the injunction hearing transcript, none of which mention Voyaidjis or any acts by him. Plaintiff's response should be supplemented to specify what acts Voyaidjis took personally that were in "reckless disregard" or "callous indifference" to plaintiff's constitutionally protected rights.

**(H)    Interrogatory No. 12 by Constant and Voyiadjis:**

Interrogatory No. 12 asks that plaintiff identify each alleged violation of his Fourteenth Amendment due process rights by Constant and Voyiadjis, as alleged in Paragraphs 72 and 73 of the Petition. Plaintiff responded by referring to his answers to Interrogatory Nos. 3 and 16 and by citing to pages of the injunction hearing transcript. Constant and Voyiadjis did not propound an Interrogatory No. 16 to plaintiff, and plaintiff's answers to Interrogatory No. 3 and the cited transcript pages make no mention of Constant or Voyaidjis or any acts by them. Plaintiff's response should therefore be supplemented.

27

**(N)     Interrogatory No. 14 by Constant and Twilley:**

Interrogatory No. 14 by Constant requests that plaintiff describe each instance wherein Constant publicly stated with malice that he was "incompetent, that he had disseminated 'irresponsible' and wrong information to the public, that he had misled the public, and that he lacked scientific experience."  Interrogatory No. 14 by Twilley asks that plaintiff describe the basis upon which he alleges in Paragraph 64 of the Petition that Twilley refused him the ability to work in gainful employment on account of his engagement in protected activity.  Plaintiff's response to Constant's Interrogatory No. 14 references his answers to Constant's Interrogatory Nos. 3 and 15.  For reasons stated previously, the response to Interrogatory No. 3, which merely identifies all of plaintiff's exhibits, is unresponsive; moreover, plaintiff's reference to Interrogatory No. 15 is insufficient because plaintiff did not even propound an Interrogatory No. 15 to Constant.  Plaintiff also refers to certain pages of the injunction hearing transcript; however, those pages do not mention any specific acts by Constant.  Accordingly, plaintiff should supplement his response to Constant's Interrogatory No. 14 and supply information relating specifically to acts by Constant.

Finally, in response to Twilley's Interrogatory No. 14, although plaintiff refers to pages 45-47 of the injunction hearing transcript, which discuss an email by Twilley to the head of Governor Blanco's Office of Coastal Affairs about the fact that Twilley wanted the Governor to know that plaintiff was not involved in the Coastal Restoration Team that helped the Corps of Engineers develop the Chief Engineers' report and which questioned plaintiff's qualifications to provide messages from higher education to state officials, such

transcript pages do not directly describe any acts by Twilley that refused plaintiff the ability to work in gainful employment. As such, plaintiff should supplement his response to Twilley's Interrogatory No. 14 to supply that information.

V.      **Defendants' request for reasonable expenses incurred:**

Because the defendants' motion to compel is granted in part and denied in part as set forth above, each party shall bear their own costs in relation to this motion, and defendants' request for an award of their reasonable expenses incurred in bringing this motion will therefore be denied.

Accordingly;

**IT IS ORDERED** that the Motion to Compel Discovery (R. Doc. 42) filed by defendants, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, David Constant, George Voyaidjis, Robert Twilley, and Brooks Keel is hereby **GRANTED IN PART** and **DENIED IN PART** and that plaintiff, Ivor van Heeden, shall produce supplemental responses, as set forth in the above ruling, within twenty (20) days of this Order.

**IT IS FURTHER ORDERED** that plaintiff and defendants are to bear their own costs with respect to this motion.

Signed in chambers in Baton Rouge, Louisiana, January 27, 2011.

_____
 **MAGISTRATE JUDGE CHRISTINE NOLAND**