UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

IVOR VAN HEERDEN

VERSUS

BOARD OF SUPERVISORS OF LOUISIANA
STATE UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE

CIVIL ACTION

NO. 10-155-JJB-CN

## **RULING ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on Defendants' motion (doc. 49) for partial summary judgment. Plaintiff has filed an opposition (doc. 54) to which Defendants have filed a reply (doc. 55). This Court's jurisdiction exists pursuant to 28 U.S.C. § 1331. Oral argument is not necessary. For the reasons stated herein, the Court GRANTS Defendants' motion.

The following facts are undisputed. In 1992, Louisiana State University ("LSU") hired Plaintiff Ivor van Heerden ("van Heerden") to work at the Louisiana Geological Survey under the title of Associate Professor-Research ("APR") (doc. 54, ex. A). According to LSU Regulation 2.6, APR is a non-tenure track position (doc. 49, ex. C) and LSU Permanent Memorandum 23 ("PM-23"), paragraph 16—which covers APRs—states that "[i]ndividuals in these ranks do not acquire tenure through the passage of time and may become tenured only by specific individual recommendation through the appropriate channels and approval by the President" (doc. 49, ex. D).

1

On October 1, 2000, Plaintiff was transferred to the College of Engineering in the Department of Civil and Environmental Engineering but maintained his position as an APR. In 2002, van Heerden was appointed to an "academic position," however, his letter of appointment clearly stated that research would be his primary contribution to the department and that the position was non-tenure track (doc. 49, ex. G). In 2008, Plaintiff filed an application to be transferred to a tenure-track position (May 19, 2010, Preliminary Injunction Hearing Transcript, p. 165). From 1992 on, a portion of Plaintiff's salary was paid from "hard money"—payments derived from state, rather than grant or contract, funds and typically reserved for academic faculty (doc. 54, exhibit A). However, during his ten years at the College of Engineering Plaintiff taught a total of four classes (doc. 55, exhibit A, pp. 168-69). In April 2009, as authorized its Bylaws and Regulations[1], the Board of Supervisors of LSU ("the Board") decided not to renew Plaintiff's contract (doc. 49, ex. C).

On February 10, 2010, Plaintiff filed suit against Defendants—the Board, Brooks Keel, Robert Twilley, George Voyiadjis and David Constant (doc. 1). Plaintiff asserts that (1) he was entitled to de facto tenure and that Defendants deprived him of due process by deciding not to renew his contract without first providing him with a hearing and (2) Defendants harassed and retaliated against

---

[1] Chapter II, sections 2-7 of LSU's regulations states that "[u]pon expiration of a term appointment, the employee becomes a free agent to whom the University System has no obligation" and that "[n]on-reappointment carries no implication whatsoever as to the quality of the employee's work, conduct, or professional experience" (doc. 49, ex. C).

him for the exercise of his First Amendment rights (doc. 1). Plaintiff seeks damages, declaratory relief stating that he is entitled to de facto tenure and injunctive relief requiring the University to renew his contract for employment (doc. 1).

On November 16, 2010, Defendants filed their motion (doc. 49) for partial summary judgment regarding Plaintiff's de facto tenure claim. Defendants assert that Plaintiff had no legitimate claim to continued employment because LSU had a formal, written tenure policy with which he did not comply and because Plaintiff was not employed in a tenure-track position and did not take the steps necessary to receive tenure (doc. 49).

On December 7, 2010, Plaintiff filed his opposition (doc. 54) to Defendants' motion for partial summary judgment. Plaintiff asserts that he obtained de facto tenure by virtue of (1) a 1992 letter discussing his salary[2]; (2) a 2000 letter memorializing his transfer from the Louisiana Geological Survey to the Department of Civil and Environmental Engineering[3]; and (3) a statement by a co-defendant that Plaintiff should "take ten months of hard money and turn it into nine months with a salary increase of hard money and change [Plaintiff's] position into an academic position."

---

[2] Plaintiff's letter of employment stated: "The enclosed paperwork describes the temporary position we discussed. . . . The salary is based on twelve months. When we advertise this as a permanent position we plan to make it on a nine-month basis at a salary approximately 9/12 of the twelve-month rate." (doc. 54, ex. 1).

[3] The letter memorializing the transfer stated that "[Plaintiff's] position (associate professor – research) will be transferred from the Louisiana Geological Survey to the Department of Civil & Environmental Engineering as a 10-month appointment" and that "[Plaintiff's] salary [would] be converted from 12-month fiscal to 10-month fiscal" (doc. 54, ex. 2).

3

Summary judgment is appropriate if the evidence establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. Rule Civ. P. 56(c). If the movant does not bear the burden of persuasion on the issue at trial, the movant may establish its entitlement to summary judgment by demonstrating that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The Fourteenth Amendment requires that an individual be given notice and an opportunity to be heard prior to being deprived of a life, liberty or property interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). A non-tenured teacher may establish that he has a property interest in continued employment sufficient to implicate the requirements of due process (hereinafter "de facto tenure") by demonstrating a legitimate claim to continued employment. *Id.* However, a mere abstract need or unilateral desire will not give rise to de facto tenure. *Id.* Determining whether an individual has obtained de facto tenure is an inherently fact-driven inquiry and requires the examination of factors such as the individual's length of service, representations made to the individual directly by the institution or tacitly through its practices and procedures. *Perry v. Sinderman*, 408 U.S. 593, 599 (1972). However, if the university has a formal, written tenure policy, courts generally refuse to find that an individual is entitled to

4

de facto tenure based on representations which contradict the policy. *Staheli v. Univ. of Miss.*, 854 F.2d 121, 124-25 (5th Cir. 1988); *see also Lovelace v. Se. Mass. Univ.*, 793 F.2d 419 (1st Cir. 1986); *Colburn v. Trustees of Ind. Univ.*, 973 F.2d 581 (7th Cir. 1992); *Geddes v. Nw. Mo. State Univ.*, 49 F.3d 426, 429-30 (8th Cir. 1995). Moreover, the Fifth Circuit has "repeatedly denied claims by non-tenured, probationary school employees that they had *de facto* tenure," reasoning that "the very existence of a tenure system means that those teachers without tenure are *not* assured of continuing employment." *Id.*

The Court finds that there is no genuine issue of material fact. Throughout his employment at LSU, Plaintiff maintained the title of APR—a fact which Plaintiff himself has recognized[4]. Except for the 2005-2006 issue of the Faculty/Staff/Student Directory (doc. 54, ex. H), in which Plaintiff was listed merely as "Associate Professor," rather than "Associate Professor-Research," Plaintiff was referred to as an APR in each and every document contained in the record. Moreover, PM-23 states that Associate Professors-Research "do not acquire tenure through the passage of time and may become tenured only by specific individual recommendation through the appropriate channels and

---

[4] At a hearing in which the Court later denied Plaintiff's request for a preliminary injunction, Plaintiff testified that he was an APR and that at all times over the last ten years he listed himself as an APR in his Curriculum Vitae (May 19, 2010, Preliminary Injunction Hearing Transcript, pp. 136-38, 152). On March 6, 2009, Plaintiff submitted a request for a performance review, listing himself as an APR. (*Id.* p. 149). Moreover, Plaintiff testified that he was aware that APR was not a tenure-track position (*Id.* pp. 136-38). In 2002, Plaintiff received a memo confirming his switch from a twelve-month to a nine-month appointment which explicitly stated that Plaintiff was "aware that this is not a tenure-track position at this time" (doc. 49, ex. G). In 2008, Plaintiff submitted a request to be transferred to a tenure track position and testified that he knew he was not in a tenure-track position at the time (*Id.* p. 165).

approval by the President" (doc. 49, ex. D). LSU Policy Statement Number 36 provides a detailed outline of the criteria and procedures necessary for an individual to obtain tenure, including nomination, application, department and non-department review and approval by the Board (doc. 49, ex. F). Moreover, Chapter II, sections 2-7 of LSU's regulations state that "[u]pon expiration of a term appointment, the employee becomes a free agent to whom the University System has no obligation" (doc. 49, ex. C).

The Court also finds that Defendants are entitled to prevail as a matter of law. LSU has a formal, written procedure for conferring tenure upon employees, which is generally fatal to a plaintiff's claim of de facto tenure. See *Staheli*, 854 at 124-25; *Lovelace*, 793 F.2d at 419; *Colburn*, 973 F.2d at 581; *Geddes*, 49 F.3d at 429-30. LSU's policy clearly states that certain positions, such as Plaintiff's, are ineligible to receive tenure and that, in any event, an individual must endure the process of nomination, application, review and approval in order to receive tenure (doc. 49, exs. C, D & F). Moreover, the representations which Plaintiff claims override the written policy—the statements regarding "hard money"—dealt exclusively with *how* he would be paid. Though being paid "hard money" might have led Plaintiff to the conclusion that he was in an academic position and thus eligible for tenure, this conclusion was not "legitimate" in light of the countless instances in which Plaintiff was reminded that he was an APR and not in a tenure-track position.

## CONCLUSION

Accordingly, the Court hereby GRANTS Defendants' motion (doc. 49) for partial summary judgment as to Plaintiff's de facto tenure claim.

Signed in Baton Rouge, Louisiana this 28th day of January, 2010.

JUDGE JAMES. J. BRADY
MIDDLE DISTRICT OF LOUISIANA