UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

IVOR VAN HEERDEN

VERSUS

BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL
COLLEGE, ET AL.

CIVIL ACTION

NO. 10-155-JJB

**RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT ON FOURTEENTH AMENDMENT-BASED SECTION 1983 CLAIMS**

Before the Court is a motion for partial summary judgment (Doc. 120) filed by defendants Brooks Keel, George Voyiadjis, Robert Twilley, and David Constant against plaintiff Ivor van Heerden on his claims of Fourteenth Amendment-based liberty deprivations brought against them under 42 U.S.C. § 1983. Van Heerden filed an opposition (Doc. 124), and defendants filed a reply (Doc. 126). Oral argument is unnecessary. Jurisdiction exists under 28 U.S.C. §§ 1331 and 1367.

I.

A.

Because the Court has recounted the factual backdrop of this case several times now, only a brief recitation of the relevant allegations need be repeated here. Van Heerden was a high-profile professor at Louisiana State University whose profile was raised even higher in the wake of Hurricane Katrina. His work at the LSU Hurricane Center and his subsequent conclusions regarding the poor performance by the U.S. Army Corps of Engineers, made public through official reports and in the media, raised concerns among certain LSU administrators. A few years later, van Heerden's yearly employment contract with LSU was not renewed. On

1

February 10, 2010, he brought several claims against LSU and four individual university administrators or supervisors.  One of those claims alleges the individual defendants deprived him of his liberty interests protected by the Fourteenth Amendment.[1]

After wrangling during discovery, van Heerden ultimately produced a discovery response encompassing the entirety of his allegations against each individual defendant for purposes of this claim.  (*See* Supplemental and Amending Answers to Defendants' Interrogatories, Doc. 120-7, at 23-24 (responding to each individual defendant's interrogatories relating to the same claim by incorporating Supplemental and Amending Answer to LSU Interrogatory No. 6); *see also* Answer to LSU Interrogatory No. 7, Doc. 120-6, at 9).  The defendants exhaustively and accurately highlight the scope of van Heerden's allegations as to each individual defendant.  (*See* Memo. in Support, Doc. 120-1, at 5-13).  The Court has previously determined, in the context of van Heerden's defamation claims against the same individuals (which relied on the same facts), that the one-year prescriptive period applicable to defamation claims resulted in facial prescription of those claims.  (Doc. 80, at 4-5).  The same one year prescriptive period applies to the claims under review here, and van Heerden relies on the same facts.

B.

The defendants here are, in ascending hierarchical order:  Voyiadjis, the chair of LSU's Department of Civil and Environmental Engineering; Constant, the former interim dean of the College of Engineering; Twilley, a former associate vice chancellor for research and economic development; and Keel, a former vice chancellor for research and economic development.  Because van Heerden's narration of events in Supplemental and Amending Answer to LSU

---

[1] The briefing concedes no protected property interest existed.

2

Case 3:10-cv-00155-JJB-DLD     Document 127      04/27/12    Page 2 of 10

Interrogatory No. 6 contains his complete case against each defendant, the Court recounts the relevant factual allegations.

Van Heerden alleges that emails Keel sent to other LSU administrators in late 2006 sought to deny him official school support for a professional award nomination. Another Keel email sent to Harold Silverman, a former LSU administrator, in mid-March 2007, following van Heerden's issuance of the Team Louisiana final report criticizing the Corps, lists media coverage of the report. Another instance is Keel's May 23, 2007, response to an email from Twilley concerning his being "confused with Ivor," asking "where is the cyanide pill," and differentiating LSU as an institution from van Heerden individually. Finally, van Heerden alleges that in the summer of 2007, Keel removed him from storm-surge modeling, prevented him from using a certain computer, and told a colleague that he would be fired if that colleague put van Heerden on a surge modeling team.

Van Heerden makes two factual allegations against Voyiadjis. The first allegation concerns Voyiadjis carrying a termination letter with him in December 2005 and/or spring 2006 but never giving it to van Heerden because LSU found out he was meeting with the governor's office. Second, van Heerden alleges Voyiadjis told him of the new terms of his employment on October 15, 2006, which changed van Heerden's job expectations. Previously, van Heerden alleges his interaction with government officials and his teaching abilities were both valuable measures of his work performance, but his performance metrics were altered to value only research output and funding obtained to pursue such research.

The allegations against Twilley are as follows. Twilley sent an email to a staffer for the governor on December 8, 2005 informing that office that van Heerden did not play a role in a report the LSU College of Engineering issued. On May 23, 2007, he exchanged the "cyanide

3

pill" email with Keel. In the summer of 2007, he replaced van Heerden as head of storm-surge modeling. On August 31, 2008, Twilley had an email conversation with a professor at another university that asserted van Heerden was not "for real" and was one of "the crazies." In 2008, he denied van Heerden use of "the correct computer" and intimated to one of van Heerden's colleagues that van Heerden would be fired if he talked to the media about surge modeling (which Twilley was by then in charge of). Finally, on September 8, 2008, Twilley ordered van Heerden to remove his storm surge model from an LSU website.

The only allegations against Constant arise from his actual termination of van Heerden in April 2009 and his declining to give van Heerden a reason other than to say it was not performance-related. This is the only factual allegation against any defendant which facially falls within the one year prescriptive period.

II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. Rule Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991), *cert. denied*, 507 U.S. 1051. If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322.

III.

Procedural due process requirements attach to a deprivation of an interest encompassed by the Fourteenth Amendments's protection of liberty. *LaRavia v. Cerise*, No. 11-30035, 2012 WL 573380, at *2 (5th Cir. Feb. 22, 2012) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)). A liberty interest is infringed, and thus a right to a hearing attaches, when a public employee is "discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities." *Id.* (quoting *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006)). To establish an actionable § 1983 Fourteenth Amendment liberty interest claim, van Heerden must prove the following seven elements:

(1) He was discharged;
(2) Stigmatizing charges were made against him in connection with that discharge;
(3) Those charges were false;
(4) He was not provided notice and an opportunity to be heard prior to the discharge;
(5) The charges were made public;
(6) He requested a hearing to clear his name; and
(7) His request was refused.

5

*Id.* (citing *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000)).

It is undisputed that van Heerden satisfies the first and last elements; he was undoubtedly discharged and he indisputably did not receive a name-clearing hearing. However, his case falters on due to prescription.

From the beginning, van Heerden overstates the contents of the faculty report issued roughly contemporaneously with his non-renewal.[2] At various times, van Heerden describes the report as "a meaningless evaluation … clearly designed to destroy the plaintiff's reputation," characterizes its contents as "falsely advising the public that he lacked professional competence, skill, research, and integrity," and claims that during its proceedings the "faculty openly accused Dr. van Heerden of committing a crime and lacking any credible research or research ability." (*See* Memo. in Opp., Doc. 124-2, at 24, 26).

Intrinsically, though, the report does little to damage van Heerden's reputation. (Majority Report, Doc. 77-1). It acknowledges his contributions to public policy debates and how those contributions may dovetail with the missions of other academic units on campus, but it chides him for not focusing on a sustained engineering/scientific research program within the department using quantitatively rigorous methodologies. (*Id.* at 22-23). The report recognizes his contributions to student mentoring but found the majority of his activities to have been focused elsewhere on campus, noting his non-attendance at monthly faculty meetings within the department. (*Id.* at 23). Far from besmirching van Heerden's "good name, reputation, honor, or

---

[2] LSU made the mistake of first not renewing van Heerden but then later organizing a rubber stamp committee to vote on the non-renewal after the fact. (*Compare* Constant Letter to van Heerden dated April 3, 2009, Doc. 77-1, Ex. B, at 21 (notifying van Heerden of non-renewal) *with* Majority Opinion on van Heerden's Faculty Performance Evaluation for Reappointment dated May 5, 2009, Doc. 77-1, Ex. C, at 22-24 (faculty of Department of Civil and Environmental Engineering recommending van Heerden's non-renewal); *see also* Ruling, Doc. 113 (discussing procedural irregularities surrounding van Heerden's non-renewal)). However, for purposes of analyzing this particular claim, the Court views this report as sufficiently connected with van Heerden's discharge to warrant attention.

6

integrity[,]" *see Roth*, 408 U.S. 564, 573 (internal quotations and citations omitted), the report dispassionately lays out the pros and cons of van Heerden's contributions to the department, and evidently his peers found them lacking. Moreover, van Heerden's brief points to no evidence showing the discussions during the faculty deliberations regarding supposed criminal allegations of practicing engineering without a license were ever made public.[3]

This is not to suggest that the report was the sole source of public perception surrounding van Heerden's discharge. However, university administrators did not directly make any other statements to the press roughly contemporaneously with his non-renewal to suggest any stigmatizing charge was laid against van Heerden *in connection with* the non-renewal. (*See, e.g.,* Nola.com Article on van Heerden's Non-Renewal, Doc. 77-10, Ex. O, at 1-2 (LSU officials refusing to comment on internal employment matter)). And, as has previously been recognized, "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Roth*, 408 U.S. at 575 (citation omitted). Thus, absent publicized charges made directly by the individual defendants that occurred roughly contemporaneously with van Heerden's non-renewal such that a connection to his discharge could reasonably be drawn, van Heerden must rely, if at all, on the inter-connectedness of previous individual statements made by university higher-ups under a theory of overall conspiracy.

Defendants argue that just as the defamation and First Amendment retaliation claims which alleged the exact same set of facts were found prescribed, the Court should also find these

---

[3] Van Heerden's affidavit (Doc. 77-9) states only that media members who contacted him were aware of the contents of the majority report, *not* the internal faculty discussions. With no evidence these allegedly stigmatizing charges were ever made outside the confines of the setting in which they were initially made—the hearing on van Heerden's non-renewal—precedent dictates this unsupported allegation does not suffice to meet the publicity element. *See Whiting v. Univ. of Southern Miss.*, 451 F.3d 339, 348 (5th Cir. 2006).

7

claims prescribed for the same reason. (*See* Ruling, Doc. 80, at 4-5; Ruling, Doc. 113, at 13-16). Typically, the party pleading prescription bears the burden of proof, but when the non-movant's petition is prescribed on its face, the burden shifts to the non-movant to prove the claim is not prescribed. *Eastin v. Energy Corp.*, 856 So.2d 49, 53 (La. 2004). Thus, on this motion for summary judgment, because the alleged acts by Keel, Voyiadjis, and Twilley giving rise to these claims—outside the non-renewal itself—took place over a year before the alleged liberty deprivation took place, the burden rests with van Heerden to prove the acts falling outside that timeframe are not prescribed.

The threshold inquiry is therefore whether allegations of a liberty deprivation may be grouped into a broader conspiracy allegation that does not ripen until the deprivation (in this case, van Heerden's employment non-renewal) occurs. Unlike First Amendment retaliation claims under § 1983, for which each discrete act of retaliation is actionable (*see* Ruling, Doc. 113, at 16-17), Fourteenth Amendment liberty deprivation claims focus on the overall effect of a discharge upon one's reputation, and therefore they do not necessarily exclude the possibility of aggregating acts. If, for instance, following van Heerden's non-renewal, both the actual decision-maker and the decision-maker's assistant or spokesperson leveled stigmatizing charges against van Heerden that were false, the Court would be hard pressed to say the statements of the decision-maker's agent could not be considered in assessing whether a liberty deprivation took place by the decision-maker. *Cf. Mizell v. North Broward Hospital District*, 427 F.2d 468 (5th Cir. 1970), *abrogated on other grounds by Bd. of Regents v. Tomanio*, 446 U.S. 478 (1980) (permitting § 1983 claim where plaintiff alleged conspiracy by several police officers and city officials to deprive him of rights which were ultimately denied to him, under traditional principles of agency); *Hoffman v. Halden*, 268 F.2d 280 (9th Cir. 1959), *overruled on other*

8

*grounds by Cohen v. Norris*, 300 F.2d 24 (9th Cir. 1962). But even assuming *arguendo* van Heerden may theoretically aggregate related stigmatizing statements under a conspiracy theory, the facts here nonetheless support application of the statute of limitations bar.

Under *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987), "the actionable civil injury to a plaintiff results from the overt acts of the defendants, not from the mere continuation of a conspiracy." It is axiomatic that a cause of action accrues, and thus the statute of limitations begins to run, "as soon as plaintiff knew or should have known of the overt acts involved in the alleged conspiracy." *Id.* This is doubly true for claims of liberty interest deprivations since an element of that claim requires that a stigmatizing charge be made public. Thus, in order for an overt act of an alleged conspiracy to deprive an individual of liberty interests secured by the Fourteenth Amendment to be cognizable, that overt act must, *inter alia*, have been made public. If it was made public, then plaintiff at least should have known of the act, meaning the statute of limitations begins to run once the act was made public. If, on the other hand, the act was *not* made public, then the statute of limitations does not matter because the act fails to meet a required element of the claim.

The acts van Heerden complains of fall into one of two categories: those acts he knew of or should have known of immediately because of their publicity (or because they were committed in his presence), and those acts which he did not learn of until he conducted discovery in this case. Of those falling into the first category, they are all facially prescribed, with the lone exception being the actual non-renewal by Constant. Of those falling into the second category, those acts fail to meet the publicity element because revelation of a stigmatizing charge "in connection with the defense of related legal action" does not count. *Whiting v. Univ. of Southern*

9

*Miss.*, 451 F.3d 339, 347 (5th Cir. 2006) (citations, quotations, and internal punctuation marks omitted).

The Court sees no reason why the culmination of the alleged conspiracy—the non-renewal of van Heerden's employment that resulted in his discharge from the university—would obviate the normal limitations rules applicable to past overt acts. Thus, because all the overt acts allegedly committed by Keel, Voyiadjis, and Twilley are either facially prescribed and/or were not publicized, the claims against them must be dismissed. Since the only remaining claim against Constant—informing van Heerden of his non-renewal—simply does not in and of itself stigmatize to such an extent that a liberty deprivation is present, *see Whiting*, 451 F.3d at 347, the Court must conclude defendants have shown an absence of genuine factual dispute on van Heerden's § 1983 liberty deprivation claims and are entitled to judgment as a matter of law. Van Heerden's claims rely entirely on either prescribed acts or acts which plainly do not meet at least one element of a liberty deprivation claim.

## IV.

Accordingly, it is ORDERED that defendants' motion for partial summary judgment on van Heerden's Fourteenth Amendment-based § 1983 claims (Doc. 120) is GRANTED in full.

Signed in Baton Rouge, Louisiana, on April 27, 2012.

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**